TOWN OF BURLINGTON *vs.* LABOR RELATIONS COMMISSION
& another.[1]

Suffolk.  May 3, 1983. — September 16, 1983.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Municipal Corporations,* Town counsel, Police, Collective bargaining.
*District Attorney. Labor,* Collective bargaining. *Police,* Prosecu-
tion of criminal cases.

A town's decision to cease using police officers as prosecutors in certain
criminal proceedings in a District Court, and to assign their prosecu-
torial duties to the town counsel, subject to the authority of the At-
torney General and district attorney to prosecute such cases, was an
exclusive managerial prerogative, and not a proper subject for collec-
tive bargaining with the local police union. [161-164]
In the circumstances, a town's discretion to cease using police officers as
prosecutors and to assign their prosecutorial duties to the town counsel
in certain criminal proceedings was limited by its obligation to
bargain under G. L. c. 150E, § 6, over the impact of its decision on the
wages, terms, and conditions of employment of its police officers.
[165-167]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 14, 1980.

The case was heard by *Urbano,* J., on motions for sum-
mary judgment.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Elizabeth A. Lane* for the plaintiff.
*Amy L. Davidson* for the defendant.
*Robert J. Canavan* for the intervener.

---

[1] International Brotherhood of Police Officers, intervener.

LYNCH, J.  The plaintiff (town) appeals from a judgment of the Superior Court dismissing its complaint and affirming in all respects the order of the Labor Relations Commission (commission), with regard to the town's assignment of prosecutorial duties in criminal proceedings customarily brought before the Fourth District Court of Eastern Middlesex at Woburn.  We reverse the judgment.

The facts giving rise to the commission's order are set forth in *Burlington* v. *District Attorney for the N. Dist.*, 381 Mass. 717 (1980), and require minimal recitation here.  For a number of years, Burlington police officers prosecuted various criminal cases in the Fourth District Court of Eastern Middlesex.  In February, 1979, the presiding judge of that court wrote to the chief of the town's police department advising that the town's criminal case load was too great for the one police officer who had been assigned since December, 1978, as a prosecutor in those cases, with the result that an excessive number of complaints were being dismissed.  He suggested the use of two full-time police prosecutors and improved preparation of cases by the police department.  The judge sent a copy of this letter to the town's board of selectmen.  The following month an additional police officer was assigned to assist with the prosecution of cases in the District Court.  At this time, the selectmen decided to cease using police prosecutors and to assign prosecutorial duties to the town counsel.  Although collective bargaining with the local chapter of the International Brotherhood of Police Officers (union) was underway for a new contract at that time, the selectmen did not introduce the topic for negotiation.  The police prosecutors, who were officials and members of the bargaining unit, heard rumors of such a change before the contract was signed in May.[2]  On

[2] The judge of the Superior Court upheld the commission's ruling that these rumors, and the town's argument that the proposed change was "common knowledge," did not constitute notice to the bargaining unit. The judge also dismissed as irrelevant the town's argument that it was the vote of the town meeting, and not the selectmen, which approved the change in prosecutorial functions.  Neither of these arguments has been renewed on appeal.

June 6, 1979, a town meeting voted to amend the town's by-law, enabling the selectmen to implement their plan.[3] The two police prosecutors were subsequently relieved of those duties and were reassigned to other duties. It is not disputed that each officer suffered a loss in pay by being removed from the specialist pay rating provided in their collective bargaining agreement with the town.[4]

In July, 1979, the union filed an unfair labor practices charge with the commission, and requested the selectmen to negotiate on the issue of reassigning prosecutorial duties previously performed by members of the bargaining unit. The selectmen did not respond, and on August 29 the commission issued a complaint alleging that the town had engaged in prohibited practices within the meaning of G. L. c. 150E, § 10 (*a*) (1) and (5).[5] By a hearing officer's decision of January 24, 1980, the town was ordered to cease and desist from assigning the duties of the police prosecutor to town counsel without first bargaining to resolution or impasse with the union. In addition, the town was ordered to reinstitute the past practice of assigning prosecutorial duties to the union's bargaining unit, and to reimburse the two affected officers for the additional compensation they would

---

[3] The by-law requiring that town counsel and each member of a law firm delegated to advise the town must have had five years' experience, was amended to allow representation by an attorney with less experience if the attorney was directly supervised by fully qualified town counsel. In addition, the town meeting appropriated funds for compensation for such representation.

[4] On the day of the transfer of prosecutorial duties, the district attorney for the Northern District made known his intention to supersede Burlington's town counsel in District Court prosecutions. We held such action unreviewable in *Burlington* v. *District Attorney for the N. Dist.*, 381 Mass. 717 (1980). The record before us does not reveal the present status of those prosecutions.

[5] General Laws c. 150E, § 10 (*a*) (1) and (5), as amended by St. 1974, c. 589, § 2, provides: "(*a*) It shall be a prohibited practice for a public employer or its designated representative to: (1) Interfere, restrain, or coerce any employee in the exercise of any right guaranteed under this chapter; . . . (5) Refuse to bargain collectively in good faith with the exclusive representative as required in section six."

have received but for the reassignment of those duties.[6]   On August 11, 1980, the commission affirmed the decision of the hearing officer.

Pursuant to G. L. c. 30A, § 14, the town appealed the commission's decision to the Superior Court, alleging that certain of the commission's findings were unsupported by substantial evidence and that certain of its rulings were erroneous in law.   The union moved to intervene, and both defendants filed a counterclaim alleging the town's noncompliance with the commission's decision.   Both the town and the commission moved for summary judgment.   On March 23, 1981, a judge of the Superior Court entered a judgment, pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), dismissing the complaint and affirming the commission's decision in its entirety.   Upon the town's appeal to the Appeals Court, we transferred the case here on our own motion.

In so far as is relevant here, the commission based its opinion and order on its previous decisions holding that, where the employer intends to continue to use services in its operation, and where those services have been performed by members of the bargaining unit, a decision to contract outside the unit for the performance of the same services is a

---

[6] The order included the following directives:

"1.   Cease and desist from: a. Failing and refusing to bargain collectively in good faith with the Union, as required by Section 6 of [G. L. c. 150E].  b. Assigning bargaining unit work, specifically the duties of the police prosecutor, to Town Counsel without first bargaining to resolution or impasse with the Union.  c. In any like or similar manner interfering with, restraining or coercing employees in the exercise of their rights under [G. L. c. 150E].

"2.   Take the following affirmative action which will effectuate the policies of [G. L. c. 150E]: a.   Reinstitute the past practice of assigning police prosecutor duties to members of the bargaining unit.  b. Upon request by the Union, immediately commence bargaining with the Union regarding the Town's decision to subcontract the police prosecutor's duties to Town Counsel.  c. Reimburse [the two former police prosecutors] for the additional compensation they would have received for performing the duties of police prosecutor had they not been unlawfully reassigned, with interest at the rate of seven (7) percent."

mandatory subject of bargaining under G. L. c. 150E, § 6,[7] absent a compelling, nondiscriminatory reason excusing the obligation to bargain. See *City of Boston*, 6 M.L.C. 1117 (1979); *City of Boston*, 4 M.L.C. 1202 (1977); *Town of Andover*, 4 M.L.C. 1086 (1977); *Town of Danvers*, 3 M.L.C. 1560 (1977). Cf. *Fibreboard Paper Prods. Corp.* v. *NLRB*, 379 U.S. 203 (1964). The commission rejected the town's argument that its decision to assign prosecutorial duties to the office of the town counsel was a managerial prerogative. The judge of the Superior Court also rejected this argument, as well as the town's advancement of considerations of public policy and the restricted scope of collective bargaining in the public sector. Cf. *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. 65, 70-71 (1979). The scope of review of the commission's decision, both in the Superior Court and in this court, is defined by G. L. c. 30A, § 14. *Southern Worcester County Regional Vocational School Dist.* v. *Labor Relations Comm'n*, 377 Mass. 897, 903 (1979). Under § 14, we may only disturb the decision for one of the causes set forth in subsection (7) (*a*)-(*g*). In this case, with due deference to the commission's expertise, we conclude that the commission committed an error of law. G. L. c. 30A, § 14 (7) (*c*).

The Legislature has imposed upon district attorneys the duty to appear for the Commonwealth in all criminal and civil cases in the Superior Court within their respective districts in which the Commonwealth is a party or has an interest. G. L. c. 12, § 27. The Legislature also requires the district attorneys to appear in all cases tried in jury sessions of the District Courts. G. L. c. 218, § 27A (*g*), as appearing in St. 1978, c. 478, § 189. The duty of a district attorney to

---

[7] General Laws c. 150E, § 6, as appearing in St. 1973, c. 1078, § 2, requires that the employer and the exclusive representative "shall meet at reasonable times, including meetings in advance of the employer's budget-making process and shall negotiate in good faith with respect to wages, hours, standards of productivity and performance, and any other terms and conditions of employment, but such obligation shall not compel either party to agree to a proposal or make a concession."

appear in the Superior Court or in a District Court jury session is superseded only by the authority of the Attorney General who is the Commonwealth's chief law officer. *Burlington* v. *District Attorney for the N. Dist.*, 381 Mass. 717, 720 (1980), and authorities cited. In addition, it has long been established that district attorneys may appear for the Commonwealth, in their discretion, in other criminal cases in the District Courts. *Id.* at 719-720. *Commonwealth* v. *Buck*, 285 Mass. 41, 43 (1933).

By G. L. c. 278, § 15, the Legislature has enabled city solicitors, town counsel, or other persons appointed to represent a city or town in prosecutions in District Courts, under the municipality's by-laws, orders, rules, or regulations, to "enter a nolle prosequi or do anything relative to such prosecution which may be done by the district attorney." *Burlington, supra* at 721 n.11. See also Mass. R. Crim. P. 2 (b) (12) & (13), 378 Mass. 844 (1979).

A sizable gap not bridged by the grants of statutory authority is the prosecution of criminal matters in District Courts in which the district attorney does not appear by obligation or discretion, and in which the city solicitor or town counsel does not appear in connection with a prosecution under a municipality's ordinance or by-law. By tradition, such cases have been prosecuted by members of the municipality's police or law departments. See K.B. Smith, Criminal Practice and Procedure § 850 (1970) ("In District Courts, throughout the Commonwealth, there are prosecutors, whose function is to represent the Commonwealth in criminal cases. The prosecutor may be a member of a city or town law department and he usually represents the Commonwealth only in regard to crimes committed in his city or town. Unlike the Attorney General or the District Attorney, he does not have to be a lawyer; in fact, the prosecutor is often a police officer"). Where such prosecutions are undertaken by police officers, those officers have been designated by the municipality acting through its police department, with the tacit consent of the district attorney. See *Burlington* v. *District Attorney for the N. Dist., supra* at 720 & n.9.

The Legislature has committed to selectmen the task of representing the town in collective bargaining with police officers. *Labor Relations Comm'n* v. *Natick,* 369 Mass. 431, 438 (1976). The power of the selectmen, under G. L. c. 150E, to bind the town to a collective bargaining agreement cannot, however, be invoked by the union to override the decision of the district attorney to enter any or all criminal cases in the District Court. Cf. *Burlington, supra.* Nor can that power be exercised by the town to secure to the bargaining unit or to any other municipal department the function of prosecution of criminal matters, as that function is vested in the district attorney.[8] To the extent that the town's power to provide for the prosecutorial function is lacking or delimited by another authority, this case is distinguishable from those cases, relied upon by the commission, involving prohibited unilateral actions by employers to contract out existing services within their control.

Our holding that the ability of the town to bargain in this area is subordinate to the discretion of the district attorney to exercise his authority does not compel the conclusion that the town was completely excused from bargaining in this case. This is not a case in which the town or an arbitrator is prohibited by the laws of the Commonwealth from taking specific action in connection with a collective bargaining agreement. Contrast *Jenkin* v. *Medford,* 380 Mass. 124 (1980); *School Comm. of Holyoke* v. *Duprey,* 8 Mass. App. Ct. 58 (1979); see *Watertown Firefighters, Local 1347* v. *Watertown,* 376 Mass. 706 (1978). Nor does this case present a direct conflict with the terms of a statute which, by not appearing among those enumerated in c. 150E, § 7 (*d*), will prevail over the terms of the bargaining agreement. Both G. L. c. 12, § 27, and G. L. c. 218, § 27A (*g*), are silent with respect to the appearance of town-designated prosecutors in such cases as are the subject of this kind of

---

[8] Citing *Burlington* v. *District Attorney for the N. Dist., supra,* the intervener's brief notes that the prosecution of criminal cases in District Courts is not the prerogative of the selectmen.

appeal. Compare *School Comm. of Marshfield* v. *Marshfield Teachers Ass'n*, 383 Mass. 881 (1981); *Bruno* v. *Chief Admin. Justice of the Trial Court*, 380 Mass. 128 (1980). As it is not contended that the town is bereft of all authority to designate persons outside the bargaining unit to prosecute criminal cases in a District Court, but only that the decision is subject to bargaining, the question is reduced to the determination of what aspects, if any, of the decision impose an obligation on the town to bargain in good faith.

We have recognized the limits which public policy may impose upon the ability of a public employer to bind itself in collective bargaining. *Boston Teachers Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 211 (1982). See *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. 65, 70-72 (1979). In cases involving the powers of school committees, we have held that certain subjects may not be submitted to collective bargaining. See decisions collected in *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557, 563-564 & n.4 (1983). We have undertaken the determination of what subjects are proper matters for collective bargaining in this area on a case by case basis. See *School Comm. of Boston* v. *Boston Teachers Local 66*, 372 Mass. 605, 614 (1977); *Boston Teachers Local 66* v. *School Comm. of Boston*, 370 Mass. 455, 464 n.5 (1976). In this case, we have no hesitancy in concluding that to the extent the town may, in the absence of being superseded by the Attorney General or the district attorney, designate persons to prosecute criminal cases in a District Court, the ingredient of public policy inherent in that designation "is so comparatively heavy that collective bargaining, and even voluntary arbitration on the subject is, as a matter of law, to be denied effect." *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. 65, 71 (1979). Thus, we hold that the decision to assign prosecutorial duties, subject only to the authority of the Attorney General and district attorney, is an exclusive managerial prerogative, and not a proper subject for collective bargaining.

Recently, we were presented with the question whether the means of effecting a reduction in force of school custodians, and the impact of the school committee's decision on the terms and conditions of employment, were mandatory subjects of bargaining under G. L. c. 150E, § 6. *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557 (1983). There it was undisputed that the decision to reduce the level of custodial services was an exclusive managerial prerogative of the school committee. We rejected the school committee's argument that bargaining over the means and impact of the decision "would be improper or impermissible." *Id.* at 564. We held that G. L. c. 150E, § 6, imposed a duty, not overcome by general statutory grants of power and authorization contained in the city charter, and not waived by a "management rights" provision in the contract, to bargain over the means and thus the impact of that decision. The question was left open whether the commission's order to award back pay would be enforced if only the implementation and impact of the decision were subjects of mandatory bargaining.

The *School Comm. of Newton* case had not been decided here when the commission and the Superior Court considered the case that is before us. In this case, the commission argued the applicability of that decision in oral argument to this court.[9] We think that the circumstances favoring bargaining ability on the impact of the town's decision are as strong here as they were in *School Comm. of Newton.* In both cases, there was no provision in the bargaining agree-

---

[9] Additionally, the Superior Court judge felt himself "instructed" by our language in *School Comm. of Boston* v. *Boston Teachers Local 66*, 378 Mass. at 72: "[E]ven where certain ultimate decisions may or have been deemed to be so laced with educational policy as to be beyond the reach of bargaining and arbitration, we have upheld arbitral awards which have merely involved questions of adherence by the school committee to *procedures* set forth in the collective bargaining agreement for resolving such determinations. . . . Other courts . . . have mandated bargaining regarding the *impact* of educational policy decisions in cases where the employer normally would not be required to bargain over the decision itself" (citations omitted).

ment covering such eventualities, and in each case the employer failed to bargain with the union over an action taken after the agreement went into effect. Both actions adversely affected the terms and conditions of employment. The action in *School Comm. of Newton* resulted in loss of employment, and the commission in the case before us concluded that the town's action had deprived the union of a bonus pay detail.[10] Moreover, two members of the union suffered a loss of pay. This was a matter directly affecting the wages, terms, and conditions of employment. Finally, the school committee's action in *School Comm. of Newton* was held to be subject to mandatory bargaining despite the fact that there was no existing practice on this subject.

In the present case, the town argues that the letter from the presiding judge of the Fourth District Court of Eastern Middlesex presented the town with "a crisis situation of grave import" requiring that "something radical and immediate had to be done to protect the public interest by providing a professional level of prosecution of the Town's cases."[11] The town continues, however, that even if the letter had not been received, and irrespective of the quality of prosecutorial duties performed by the police, it would not have been obliged to bargain over the replacement of police prosecutors by town counsel. In terms of the effect of the decision on the bargaining unit, such exercise of a managerial prerogative sweeps too broadly. After the town received the presiding judge's letter in February, 1979, its first response was to assign an additional police prosecutor. The police continued to handle prosecutions for several months, while the town moved toward implementation of

---

[10] The commission noted that the town raised no question with respect to a showing of substantial detriment to the bargaining unit at the hearing or on appeal. See *City of Boston*, 6 M.L.C. 1117, 1123 (1979).

[11] The town suggests that the cost savings in replacing two employees with one would be some incentive for action out of concern for fiscal efficiency. We do not find factual support for this suggestion in the findings of the commission, and such an argument does not appear to have been developed below.

its plan through the ordinary process. The commission found that the police prosecutors, who were also union officials and members of the bargaining team, learned through rumors of the possibility of a change in early April, while negotiations for the subsequent agreement were being conducted. The town never alluded to the planned change before agreement was reached in May, and it implemented the change some six weeks after the agreement had been signed. Thereafter, it failed to respond to the union's attempt to bargain after the fact. In these circumstances, the town's discretion to act was "limited by [its] obligation to bargain stated in G. L. c. 150E, § 6," over the impact of the action on the bargaining unit. *School Comm. of Newton* v. *Labor Relations Comm'n, supra* at 566. Our holding goes no further than to determine, on these facts, that to bargain over the impact of its decision would not have constituted an interference with the town's "right to determine . . . policy." *Id.*

It follows that a new order by the commission is required. The appropriate order in this case was foreshadowed in *School Comm. of Newton* v. *Labor Relations Comm'n, supra* at 577-578, quoting *City of Quincy,* 8 M.L.C. 1217, 1220 (1981). The judgment of the Superior Court is reversed. The order entered by the commission is to be set aside. A new order is to be entered consistent with this opinion.

*So ordered.*