WEST BRIDGEWATER POLICE ASSOCIATION vs. LABOR RELATIONS COMMISSION; TOWN OF WEST BRIDGEWATER, intervener.

Suffolk. May 9, 1984. — September 17, 1984.

Present: GREANEY, C.J., CUTTER, & DREBEN, JJ.

*Labor*, Collective bargaining, Duty to bargain. *Police*, Collective bargaining.

The Labor Relations Commission did not err in concluding that a town was not required to bargain with a policemen's union over its decision to change its policy respecting court appearances by police officers where the only impact of its decision on police officers was a reduction in their opportunity for unscheduled overtime. [552-555]

APPEAL from a decision of the Labor Relations Commission.

*Lawrence M. Siskind* for the plaintiff.

*John P. Lee* for the intervener.

*Jean Strauten Driscoll* for the defendant.

DREBEN, J. The Labor Relations Commission (commission) held that the town of West Bridgewater is not required to bargain over the impact of a legitimate managerial decision whose only impact was "a reduction in the employees' ability to perform unscheduled overtime." This is an appeal by the West Bridgewater Police Association (union) from that decision. The union claims that earlier decisions of the commission require that the overtime be considered a condition of employment[1] and that the commission's present analysis is erroneous.

---

[1] General Laws c. 150E, § 6, inserted by St. 1973, c. 1078, § 2, provides that "[t]he employer and the exclusive representative shall meet at reasonable times, including meetings in advance of the employer's budget-making process and shall negotiate in good faith with respect to wages, hours, standards of productivity and performance, and any other terms and conditions of employment, but such obligation shall not compel either party to agree to a proposal or make a concession." General Laws c. 150E, § 10(a)(5),

We cannot say that the commission "was wrong, either as matter of law or as public policy, in its interpretation" of the town's duty to bargain over unscheduled overtime, and we conclude that its interpretation should be followed in this case. See *Massachusetts Organization of State Engrs. & Scientists* v. *Labor Relations Commn.*, 389 Mass. 920, 924, 928 (1983).

The facts as found by the hearing officer and by the commission are largely undisputed. For fifteen years prior to July 1, 1981, arresting officers appeared in court at arraignments (and, according to the union, to sign complaints). The collective bargaining agreement provided that each arresting officer who made a court appearance while on night duty, or while off duty, was to receive not less than three hours' additional pay at overtime rates. The agreement did not require that arresting officers make such court appearances, nor did it provide for any minimum amount of overtime. For budgetary reasons, the town changed its procedures effective July 1, 1981, so that arresting officers no longer had to be present in court. Instead, the officer prosecuting cases was to sign complaints and appear at arraignments.

The hearings officer found that the change resulted in a loss of overtime which, in some cases, was significant. He concluded, relying on two earlier cases of the commission, *City of Lowell*, 6 MLC 1173, 1175 (1979); *City of Everett*, 7 M.L.C. 1012, 1015 (1980), that the town had a duty to bargain over the impact of its unilateral decision to change the court appearance policy. The town appealed to the commission. Recognizing that its earlier decisions were affected by a very recent decision, *Town of Billerica*, 8 M.L.C. 1957 (1982), which differentiated between scheduled and unscheduled overtime, the commission solicited further statements from the parties. After receiving an additional memorandum from the town and a letter from the union indicating that it rested on the merits of the hearings officer's decision, the commission reversed the

as amended by St. 1974, c. 589, § 2, makes it a prohibited practice for a public employer or its designated representative to "[r]efuse to bargain collectively in good faith with the exclusive representative as required in section six."

hearings officer. It held that the town was not required to bargain over the underlying decision to assign all arraignment work to one member of the bargaining unit, the prosecuting officer. This was a core management determination.[2] In addition, the commission held that the town need not bargain over the impact of the decision on the overtime earnings here involved. Following its *Billerica* decision and another recent case,[3] it distinguished between regular overtime, which ordinarily cannot be eliminated unilaterally, and "unscheduled" overtime, which can.

The question before us is whether the determination that unscheduled overtime is not a condition of employment is an erroneous construction of G. L. c. 150E, § 6. See note 1, *supra*. The interpretation of a statute is, of course, a question of law for the court. " ' [W]here, as here, [however] an agency must interpret a legislative policy which is only broadly set out in the governing statute,' " the precepts of construction giving deference to an administrative interpretation of a statute are "especially significant." *Massachusetts Organization of State Engrs. & Scientists* v. *Labor Relations Commn.*, 389 Mass. at 924. In that case the Supreme Judicial Court pointed out, "[W]e cannot say that the commission was wrong, either as a matter of law or as public policy, in its interpretation of the Commonwealth's duty to bargain and participate in factfinding after impasse."[4] *Id.* at 928.

The United States Supreme Court, "in construing the bargaining requirements imposed by the parallel provisions of the

---

[2] The union does not challenge this portion of the commission's decision, which preceded and is consistent with *Burlington* v. *Labor Relations Commn.*, 390 Mass. 157 (1983).

[3] In *Town of Dracut*, 9 M.L.C. 1702, 1705 (1983), overtime was determined on an ad hoc basis depending upon the town's staffing needs. The commission held the availability of overtime was not a condition of employment.

[4] The court accepted the commission's construction which permitted implementation of changes prior to the completion of factfinding although the statute did not specifically allow or prohibit implementation of unilateral changes prior to the completion of factfinding, see G. L. c. 150E, § 10(*a*)(6).

National Labor Relations Act,"[5] *Local 346, Intl. Bhd. of Police Officers* v. *Labor Relations Commn.*, 391 Mass. 429, 438 (1984), adopted the National Labor Relations Board's determination that "in-plant food prices are among those terms and conditions of employment defined in § 8(d)." *Ford Motor Co.* v. *NLRB*, 441 U.S. 488, 494 (1979). The Court commented, "Construing and applying the duty to bargain and the language . . . 'other terms and conditions of employment,' are tasks lying at the heart of the Board's function." *Id.* at 497. The Court also referred to the legislative history of the Act saying, "Congress made a conscious decision to . . . delegat[e] to the Board . . . the primary responsibility of marking out the scope of the statutory language and of the statutory duty to bargain." *Id.* at 496, see particularly n.8.[6]

Where, as here, "it is evident that [the Legislature] assigned [to the commission] the primary task of construing . . . 'terms [and] conditions of employment,'" *id.* at 495, we turn to whether there are legal or policy considerations which militate against the commission's interpretation.

The union urges that the recent decision in *Burlington* v. *Labor Relations Commn.*, 390 Mass. 157 (1983), confirms the decisions in the earlier commission cases of *Lowell* and *Everett* and precludes the commission's present construction. We do

---

[5] Section 8(d) of the National Labor Relations Act, 29 U.S.C. § 158(d) (1982), is parallel to § 6 of c. 150E and imposes a mutual obligation on employer and the union to confer "with respect to wages, hours, and other terms and conditions of employment."

[6] Note 8 at 496 reads: "'The appropriate scope of collective bargaining cannot be determined by a formula; it will inevitably depend upon the traditions of an industry, the social and political climate at any given time, the needs of employers and employees, and many related factors. What are proper subject matters for collective bargaining should be left in the first instance to employers and trade unions, and in the second place, to any administrative agency skilled in the field and competent to devote the necessary time to a study of industrial practices and traditions in each industry or area of the country, subject to review by the courts. It cannot and should not be strait-jacketed by legislative enactment.' H.R. Rep. No. 245, 80th Cong., 1st Sess., 71 (1947) (minority report)."

The House bill which contained a specific listing of the issues subject to mandatory bargaining was rejected in conference. See *Ford Motor Co.* v. *NLRB*, 441 U.S. at 495-496.

not read *Burlington* in that fashion. There, the "town raised no question with respect to a showing of substantial detriment to the bargaining unit."[7] *Id.* at 166, n.10. Nor does it appear that the town or any party questioned the treatment by the commission of specialist pay as a condition of employment. It was undisputed that two police officers were relieved of their regular full time duties as prosecutors and that these two officers suffered the entire loss of pay. *Id.* at 158-159. Not only is *Burlington* distinguishable on its facts, but in its decision in the case at bar the commission specifically noted that it was not considering "regular payment of extra compensation to police officers who simply worked a regular scheduled shift, *albeit* termed as 'overtime.'" Such overtime would be a condition of employment.

We also see no policy considerations against the commission's interpretation. At least since 1977, see *Town of Danvers*, 3 M.L.C. 1559, 1571, the commission has taken the position that "management decisions which do not have direct impact on terms and conditions of employment" are not mandatory subjects of bargaining. The courts are in accord. "[T]he purpose of 8(*d*) is to describe a limited area subject to the duty of collective bargaining[. T]hose management decisions which are fundamental to the basic direction of a corporate enterprise or which impinge only indirectly upon employment security should be excluded from that area." *Fibreboard Paper Prods. Corp.* v. *NLRB*, 379 U.S. 203, 223 (1964) (Stewart, J., concurring). See also *Local 346, Intl. Bhd. of Police Officers* v. *Labor Relations Commn.*, 391 Mass. at 438.

The commission's decision treated irregular or unscheduled overtime as a peripheral matter which did not impinge directly on wages. Compare *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 563 (1983). We note that, in other contexts, the regularity of compensation has been considered important in determining whether certain payments constitute a term of employment. Thus "a *regularly* paid bonus may

---

[7] The commission distinguished *Burlington* on the ground that in that case, "the employer's decision resulted in a loss of bargaining unit work."

come to be relied upon . . . as a part of . . . compensation" (emphasis supplied). *Beacon Journal Publishing Co.* v. *NLRB*, 401 F.2d 366, 367 (6th Cir. 1968). *Radio Television Technical Sch., Inc.* v. *NLRB*, 488 F.2d 457, 460 (3d Cir. 1973).

The commission was not irrevocably bound to its earlier decisions. Not only may the scope of bargaining change with the times, see note 6, *supra*, but a different balancing of factors may be appropriate for different occupations. See *Local 346, Intl. Bhd. of Police Officers* v. *Labor Relations Commn.*, 391 Mass. at 438. An administrative agency, in proceeding on a case-by-case basis, should be permitted to make refinements and even new rules in light of past experience. See *Brookline* v. *Commissioner of Environmental Quality Engr.*, 387 Mass. 372, 379 (1982); *NLRB* v. *Hendricks County Rural Elec. Membership Corp.*, 454 U.S. 170, 189 n.22 (1981). It cannot be claimed here that "the application of new principles or standards . . . [is] so unfair as to amount to an abuse of discretion." *Brookline* v. *Commissioner of Environmental Quality Engr., supra* at 379. *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. at 567.

Accordingly, we affirm the decision of the commission dismissing the complaint.

*So ordered.*