SECRETARY OF ADMINISTRATION & FINANCE[1] *vs.*
COMMONWEALTH EMPLOYMENT RELATIONS BOARD.[2]

No. 08-P-251.

Suffolk. December 9, 2008. - April 16, 2009.

Present: McHugh, Brown, & Vuono, JJ.

*Labor Relations Commission. Labor,* Public employment, Collective bargaining. *Public Employment,* Collective bargaining. *Taxation,* Withholding from wages. *Public Policy.*

No error of law or offense to public policy arose from a decision of the Labor Relations Commission that the Commonwealth, as employer, acting through the Executive Office for Administration and Finance, had violated G. L. c. 150E, § 10(*a*)(1) and (5), by unilaterally implementing, for the first time, mandatory reporting and withholding requirements on the taxable portion of the value of certain fringe benefits provided by the Massachusetts Highway Department to some of its union employees, where, even if the imposition of a new tax withholding for the fringe benefits was beyond the scope of collective bargaining, the impact of that change affected the union employees' wages, a mandatory subject of bargaining, and therefore required the Commonwealth to provide the union with notice and the opportunity to engage in impact bargaining before implementation. [94-98]

APPEAL from a decision of the Labor Relations Commission.

*Ronald F. Kehoe,* Assistant Attorney General, for the plaintiff.

*Cynthia A. Spahl,* for the defendant, submitted a brief.

BROWN, J. Prior to 2000, the Massachusetts Highway Department (MHD) provided some of its union engineers with free

---

[1]The Secretary of Administration and Finance is also known as the Commissioner of Administration. See G. L. c. 7, § 4, as appearing in St. 1996, c. 151, § 34.

[2]Formerly known as the Labor Relations Commission (commission). See, e.g., G. L. c. 23, § 9O, and G. L. c. 150E, § 11, as in effect prior to St. 2007, c. 145, §§ 5, 7. For convenience, we shall refer to the appellee in this opinion as the commission.

parking at its headquarters located at Ten Park Plaza in Boston.[3] This action arose out of the decision by the Commonwealth, as employer, acting through the Executive Office for Administration and Finance (EOAF), to unilaterally implement, for the first time, mandatory reporting and withholding requirements on the taxable portion of the value of those fringe benefits.

After issuing a complaint of prohibited practice, the Labor Relations Commission (commission) concluded that the Commonwealth had violated G. L. c. 150E, § 10(*a*)(1) and (5), by changing the union members' wages without engaging in collective bargaining over the impacts of the application of the Internal Revenue Service (IRS) and Department of Revenue (DOR) regulations. The Commonwealth sought judicial review of that decision in accordance with the provisions of G. L. c. 30A, § 14. See G. L. c. 150E, § 11. Giving due deference to the commission's "specialized knowledge and expertise, and to its interpretation of the applicable statutory provisions," *Worcester* v. *Labor Relations Commn.*, 438 Mass. 177, 180 (2002), we conclude that there was neither error of law nor offense to public policy in the decision. Accordingly, we affirm the decision and order of the commission.

*Stipulated facts.*[4] Under Federal and State law, employees are permitted to exclude a limited amount of qualified parking fringe benefits from their gross income. See 26 U.S.C. § 132(f) (2000); I.R.S. Notice 94-3, 1994-1 C.B. 327. In calendar year 2000, the Federal and State exclusions, adjusted for inflation, were capped at $175 and $185 per month.[5]

After completing a survey of Boston area parking rates in December, 1999, the Commonwealth concluded that the fair

---

[3]These engineers were members of statewide bargaining unit 9 (hereinafter union members). The Massachusetts Organization of State Engineers and Scientists (union), an employee organization within the meaning of G. L. c. 150E, § 1, was their exclusive collective bargaining representative.

[4]The parties submitted the matter to the commission on a statement of agreed facts, joint exhibits, and briefs.

[5]Although the DOR follows 26 U.S.C. § 132(f), in the time period relevant to this appeal, it calculated the yearly inflation adjustment through a different method, explaining the difference in the Federal and State exclusion amounts. See DOR Technical Information Release (TIR) 00-4 (March 3, 2000), reprinted in Official MassTax Guide, Cumulative Supplement 3, December 2000 (West 2001).

market value of its employer-provided parking, as defined in the IRS regulations, exceeded the amount of the exclusions, triggering tax reporting and withholding requirements.[6] Accordingly, the Comptroller of the Commonwealth instructed all chief fiscal officers to begin treating the excess value as a noncash benefit and adding it to the employees' gross income for tax reporting and withholding purposes. Consistent with this directive, MHD subsequently determined that the fair market value of the parking passes provided to the union members was $260 per month.

On July 7, 2000, the Office of the Comptroller issued a detailed implementation memorandum instructing departmental payroll directors to notify affected employees that the excess value of the parking fringe benefit was subject to taxation retroactively to January 1, 2000.

By interoffice memorandum, MHD explained the tax requirements and the implementation process, informing the union members that after the relevant exclusions were applied, $85 per month would be added to their taxable Federal gross income, and $75 per month would be added to their taxable State gross income, effective the first pay period of August. MHD also provided the union members with the tax option selection form developed by the Comptroller.[7]

The Commonwealth implemented these mandatory changes

---

[6]Under the applicable IRS regulations, the value of the parking fringe benefit provided to an employee is "the cost (including taxes or other added fees) that an individual would incur in an arm's-length transaction to obtain parking at the same site. If that cost is not ascertainable, then the value . . . is based on the [arm's-length] cost . . . for a space in the same lot or a comparable lot in the same general location . . . ." I.R.S. Notice 94-3, 1994-1 C.B. 327, 330.

[7]For calendar year 2000, the excess values of the parking benefit subject to Federal and State taxation and withholding were $1,020 and $900. The tax option selection form gave union members three withholding choices with respect to the taxable portions owed retroactively for the first six months of 2000: (1) taxes withheld one time on the entire lump sum amount; (2) taxes not withheld; and (3) taxes withheld in an amount selected by the employee every biweekly pay period. For the second half of calendar year 2000, the Commonwealth decided to withhold taxes on a recurring basis; the selection form permitted the union members to add the excess value to their taxable gross income in the first or second pay period of each month, or to split the amount between the two.

without providing notice to the union or the opportunity to discuss the implementation process. Moreover, when the union objected to the change in the terms and conditions of the union members' employment, the Commonwealth refused to meet with the union to discuss the subject of the parking fringe benefits.

*Discussion.* The parties agree that the Commonwealth, acting through EOAF, had no duty to bargain over the application of the reporting and withholding requirements mandated by Federal and State income tax laws. See *Massachusetts Correction Officers Federated Union* v. *Labor Relations Commn.*, 417 Mass. 7, 8-9 (1994) (*MCOFU*).

The question for decision is whether, even if the imposition of a new tax withholding for the parking fringe benefits was beyond the scope of collective bargaining, the Commonwealth was required to negotiate over the impact of that change on the union members' wages. Relying upon *MCOFU* and its past decisions, the commission found that because the change affected the union members' wages, a mandatory subject of bargaining, notice to the union and the opportunity to engage in impact bargaining before implementation were required. See G. L. c. 150E, § 6.

On appeal, the Commonwealth argues that the commission erred by relying upon *MCOFU* as the legal foundation of its decision. As the Commonwealth reads *MCOFU*, the Supreme Judicial Court merely noted twice in passing that the employer had voluntarily agreed to engage in impact bargaining; and that absent any ruling, holding, or favorable dictum from the Supreme Judicial Court, that case cannot serve as precedent requiring impact bargaining here. The Commonwealth reads *MCOFU* too narrowly.

*MCOFU* involved a union challenge to the Commonwealth's unilateral reduction of certain health insurance benefits, ordinarily a mandatory subject of bargaining. The change in benefits was made by a third party, the Group Insurance Commission (GIC), pursuant to its statutory authority, a decision over which neither the Commonwealth, as employer, nor the union had any control. The Supreme Judicial Court held that the commission "correctly concluded that, because the [EOAF], acting for the Commonwealth, had no control over the GIC, the Commonwealth was relieved of any obligation to bargain over the decision (*as opposed to the impact of the decision*) to alter health insurance

*coverage. . . . As the employer agreed, however, the impact of that decision remained subject to bargaining.*" (Emphasis added.) *MCOFU*, 417 Mass. at 9.

The Supreme Judicial Court's decision in *MCOFU* did not reach any issue regarding impact bargaining because that requirement was not disputed by the parties. Moreover, the court was careful to distinguish the non-negotiable subject from the negotiable subject to which the mandatory duty to bargain attached. This language supports the commission's determination here that the Commonwealth had the duty to bargain over the impact of the mandatory withholding on wages.

*MCOFU* does not stand alone. Other Massachusetts cases requiring impact bargaining support the result reached by the commission. See, e.g., *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 563-564 (1983); *Burlington* v. *Labor Relations Commn.*, 390 Mass. 157, 164-167 (1983); *Boston* v. *Boston Police Patrolmen's Assn., Inc.* 403 Mass. 680, 684-685 (1989); *Worcester* v. *Labor Relations Commn.*, 438 Mass. at 185. These cases are consistent with our strong public policy favoring collective bargaining between employers and employees over the terms and conditions of employment.[8] See G. L. c. 150E, § 6; *Somerville* v. *Somerville Mun. Employees Assn.*, 451 Mass. 493, 496 (2008).

The remainder of the case argued on appeal by successor counsel for the Commonwealth looks nothing like the one presented to the board. Review pursuant to G. L. c. 30A is not the time to insert new issues into the case, especially those requiring statutory interpretation best left to the commission's expertise in the first instance. See *Massachusetts Org. of State Engrs. & Scientists* v. *Labor Relations Commn.*, 389 Mass. 920, 924 (1983). We deem any arguments raised for the first time in this appeal waived. See *McCormick* v. *Labor Relations Commn.*, 412 Mass. 164, 166 (1992); *Anderson* v. *Commonwealth Employment Relations Bd.*, 73 Mass. App. Ct. 908, 909 n.7 (2009).

Were we to reach the merits if the Commonwealth's argu-

---

[8]In light of the Massachusetts precedents on point, there is no need to look to Federal labor law for guidance. In any event, we have considered the National Labor Relations Board cases cited by the Commonwealth in its brief and found them inapposite.

ments, we would find them lacking in substance. Where a non-negotiable decision may be implemented in various ways, the public employer may be required to engage in impact bargaining with the union. See *Lynn* v. *Labor Relations Commn.*, 43 Mass. App. Ct. 172, 179-180 (1997). While we agree that the Commonwealth as employer had no discretion regarding its obligation to follow the tax laws, it did possess a fair amount of discretion and control regarding the precise tax treatment of the excess value of the fringe benefits. Given this measure of discretion, detailed below, the impact of the implementation on wages was not, as the Commonwealth argues, "inseparable" from the non-negotiable, legally required implementation of the withholding itself.

Although the Commonwealth, as employer, was required to implement reporting and withholding for employer-provided parking in 2000, much of the implementation process was left to its discretion. For example, for tax and withholding purposes, the IRS rules permitted employers to treat the fringe benefits as paid on a pay period, quarterly, semiannual, annual, or other basis. See I.R.S. Notice 94-3, 1994-1 C.B. 327, 331.[9]

The timing of the withholdings was not the only area in which the Commonwealth had control. As explained in IRS guidelines, the Commonwealth could have charged the union members directly for the excess value per month, thereby avoiding the tax and withholding requirements altogether. The IRS also permitted employers either to add the value of the fringe benefits to regular wages for a payroll period and to calculate income tax withholding on that total, or to withhold income tax on the value of the fringe benefit at the flat twenty-eight percent rate applicable to supplemental wages. In light of all these choices, we reject the

[9]In passing, we note that the only limit placed upon the employers' discretion in this regard was the requirement that the benefits be treated as paid no less frequently than annually. Moreover, under the IRS's special accounting rule, employers could treat the value of the taxable noncash fringe benefits provided during the last two months of the calendar year as paid in the following year. The tax option selection form undercuts the Commonwealth's argument that there was no impact on wages within its control and only one way to implement the tax mandate. We note that the two most advantageous methods for employees (choosing December 31, 2000, as the date on which the benefit was paid, and deferral) were not offered to the union members.

Commonwealth's assertion that there was nothing to discuss during any bargaining session.[10]

As discussed above, the Commonwealth had discretion and control under the tax laws over the method of implementing the withholding for the employer-provided benefits. The tax statutes did not prohibit employers from bargaining about this issue. Absent such a conflict, or an undermining of the purpose of the tax laws by collective bargaining, the Commonwealth was not excused from the general rule requiring bargaining with respect to the terms and conditions of employment.

The Commonwealth argues that any impact on the union members' wages from the implementation was immaterial, thereby excusing it from bargaining. The Commonwealth's reliance upon *West Bridgewater Police Assn.* v. *Labor Relations Commn.*, 18 Mass. App. Ct. 550 (1984), is misplaced. There, this court upheld the commission's determination that unscheduled, irregular overtime was a peripheral matter not impinging directly on wages and not a condition of employment within the meaning of G. L. c. 150E, § 6. See 18 Mass. App. Ct. at 553-554. In its decision, the commission had distinguished the regular payment of extra compensation for working regular overtime shifts, which would be a condition of employment requiring bargaining. *Id.* at 554. This court noted that in other contexts, in determining whether a payment rose to the level of a term of employment, the distinguishing factor was the regularity of the compensation. *Id.* at 554-555.

Here, the application of the tax laws directly increased the union members' gross taxable wages and caused a loss of approximately $300 in regular annual take home pay. While the employer might think differently, from the employees' perspective, the loss of $300 cannot be described as immaterial. There is no more fundamental term or condition of employment than pay. The Commonwealth has provided no authority for its assertion that this amount was "negligible."

---

[10]It is true, as the Commonwealth points out, that if there is a conflict between the terms of a collectively bargained agreement and the terms of any statutes not listed in G. L. c. 150E, § 7(*d*), such as the tax laws, the terms of the latter will prevail. No bargaining about those terms is required. See *School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. at 566. Application of those principles does not assist the Commonwealth here, where no conflict has been shown.

The Commonwealth has failed to establish that the commission's decision was contrary to any public policy. In the Commonwealth's view, given the protracted nature of collective bargaining and the "indefinite" delay until resolution or impasse, the imposition of a pre-implementation duty to bargain would subvert the tax laws and subject the Commonwealth and the union members to penalties. This argument is not supported by the stipulated facts and is entirely speculative.

Although the increase in parking rates triggered the mandatory reporting and withholding requirements for calendar year 2000, the Commonwealth had the entire year to implement those changes. Nothing in the tax laws required implementation by January 1, 2000. Thus, the Commonwealth had no looming deadline outside its control or exigent circumstances that might have excused the decision to implement the changes without bargaining. Moreover, because the Commonwealth did not give the union the opportunity to negotiate, it cannot establish the length of the delay caused by the bargaining. If the Commonwealth had agreed to bargain and no resolution or impasse was in sight as the implementation deadline approached, under longstanding commission precedent, the Commonwealth could have imposed a reasonable negotiation deadline, implemented the withholding, and continued post-implementation bargaining without running afoul of its obligations under G. L. c. 150E. See *Town of Plymouth*, 26 M.L.C. 220, 223-224 (2000).

For the first time in 2000, the union members were taxed, through an increase in their gross wages, for some of their parking privileges. The Commonwealth asked them to choose from withholding choices selected solely by the Commonwealth without any input from their union. The union had the right to expect the Commonwealth to discuss the fairness of the implementation process and the withholding choices available to the union members. The topics open for bargaining were limited in scope. Cast in this light, the Commonwealth's decision to drag this case out through the appellate process rather than sitting down for a negotiating session with the union is not only perplexing, but also imprudent and wasteful.

The decision and order of the commission are affirmed.

*So ordered.*