NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1131

KENNETH MACDONALD & another[1]

vs.

KRISTEN KAZOKAS & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiffs, Kenneth and Jodi MacDonald, appeal from a judgment of the Superior Court affirming decisions of the Conservation Commission of Littleton (commission) granting defendant Kristen Kazokas an order of conditions (OOC) and an amended order of conditions allowing her to upgrade her property in Littleton (property).[3]  We conclude that the commission's findings that minimum fire safety requirements are within the public interest and that Kazokas's proposed plan was the least

_____

[1] Jodi MacDonald.

[2] Conservation Commission of Littleton.

[3] This case was paired for oral argument with A.C. Docket No. 24-P-923 (MacDonald vs. Department of Environmental Protection), also released today.

environmentally damaging practicable alternative were supported by substantial evidence and were neither arbitrary nor capricious.  We also conclude that the commission's finding that the wetlands delineations, reviewed and approved by its own wetlands specialist, were accurate was not an abuse of discretion.  Finally, concluding that the commission's issuance of an amended OOC that decreased the environmental impact of the project was proper, we affirm.

1.  Standard of review.  Where a local conservation commission grants an OOC under local bylaws and regulations, abutters "who can establish that they suffered injury to a protected legal interest" may request certiorari review. Friedman v. Conservation Comm'n of Edgartown, 62 Mass. App. Ct. 539, 543 (2004).  "In an action in the nature of certiorari challenging a wetlands permit decision made by a conservation commission pursuant to a local by-law, our review is limited at most to whether the commission's decision is supported by substantial evidence in the administrative record, whether the commission's action was arbitrary and capricious, and whether the commission committed an abuse of discretion or other error of law."  Delapa v. Conservation Comm'n of Falmouth, 93 Mass. App. Ct. 729, 733-734 (2018).  "Substantial evidence [is] such evidence as a reasonable mind might accept as adequate to support a conclusion."  Cave Corp. v. Conservation Comm'n of

2

Attleboro, 91 Mass. App. Ct. 767, 773 (2017), quoting Healer v. Department of Envtl. Protection, 75 Mass. App. Ct. 8, 13 (2009). Under the substantial evidence standard, a court "may not displace an agency's deliberative choice between two fairly conflicting views of the record evidence." McGovern v. State Ethics Comm'n, 96 Mass. App. Ct. 221, 231 (2019).

"The court shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14. Accord Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992). Where, as here, the Superior Court judge decided the certiorari actions on the pleadings, we review that decision de novo. See Boston Clear Water Co. v. Lynnfield, 100 Mass. App. Ct. 657, 660 (2022).

2. Driveway expansion and improvement. a. Regulatory standard. Absent a waiver, the town of Littleton prohibits work within fifty feet of wetlands resource areas. Town of Littleton bylaws (bylaws) § 171-1(D) (2013); Town of Littleton Wetland Protections Regulations (regulations) § 4.2(2)(a) (2016). "No activities or work is permitted other than passive (foot or non-motorized vehicle) passage and removal of invasive vegetation," and "the area should remain unchanged from its pre-project state." Regulations § 4.2(2)(a). The commission may grant a waiver from this prohibition when the commission determines that

3

such waiver is "in the public interest, necessary to avoid a taking, necessary to prevent a safety hazard, or water dependent," is "consistent with the intent and purpose of [bylaws § 171]," and is "the least environmentally damaging practicable alternative."  Regulations § 1.4.

Here, although the bulk of the proposed work is outside the protected area, the project would expand and make improvements to an existing driveway within the protected area so that construction and emergency vehicles could access the property and the residence.  The commission found that a waiver was in the public interest, consistent with the intent and purpose of the bylaws, and the least environmentally damaging practicable alternative.

b.  Public interest.  The regulations do not define "public interest."[4]  Regulations § 1.4.  The commission found the waiver within the public interest "to get access entirely on the owner's property, and off adjacent lots."  As it stands, Kazokas is using her neighbors' property to access her own.  The commission also, and more crucially, credited the fire chief's analysis that "the current driveway is substandard" and that, "depending on the fire," the fire department may need to use

_____

    [4] Regulations § 1.4 unambiguously enumerates four separate bases upon which the commission may rely when granting a waiver. Accordingly, an action that is "in the public interest" does not also have to be "necessary to prevent a safety hazard."

4

both the driveway from Cottage Street and the proposed improved driveway from Shagbark Drive to fight a fire.

At a public commission hearing on July 24, 2017, the fire chief supported Kazokas's plan to upgrade the driveway to gravel with a minimum width of twelve feet. The chief stated that the department "would need the 12 [feet] to safely -- actually, have a decent access all the way down to the bottom." Although the fire department has smaller trucks, "when a house is on fire, you are getting . . . the appropriate vehicle that you need . . . it's the difference of a vehicle pumping 1,500 gallons a minute compared to 400 or 500 gallons a minute." The department "would probably use both routes," and, if unable to get enough water from the pond, then "would need both driveways." The commission was entitled to credit the chief's testimony that "any of the improvements down there . . . benefit everybody." Where Kazokas's plans would expand the use of a forested property by transitioning a seasonal cottage into a four-bedroom home, the commission could reasonably find that the public interest is served by improved firefighting access.

c. <u>Least environmentally damaging practicable alternative</u>. Regulations § 1.4 requires that a waiver be granted only if it is the least environmentally damaging practicable alternative. The plaintiff argues that the least environmentally damaging alternative exists in continued use of Cottage Way without

5

expanding the driveway off Shagbark Drive.  The commission found, though, "that access from just Cottage Way would not be a preferred alternative" and that Kazokas's "proposed improvement . . . would be the minimum acceptable."  The commission considered whether Kazokas could alternatively widen the other side of the driveway, away from the wetlands, but concluded "that would mean ledge removal and more tree cutting."  Based on the evidence before it, the commission reasonably concluded that "[i]mprovements to the access road have been minimized as much as possible, and the owner has taken great care to avoid tree removal or other disturbances."  See Comtois v. State Ethics Comm'n, 102 Mass. App. Ct. 424, 427 (2023), quoting McGovern, 96 Mass. App. Ct at 227 ("A reviewing court may not make a de novo determination of the facts, make different credibility choices, or draw different inferences from the facts as found by the commission").

3.  Wetlands delineation.  The town requires delineation of wetlands in making its waiver determinations.  Specifically, resources must "be marked in the field with numbered flagging tape, which will correspond to the Areas Subject to Protection numerically indicated on the Plans.  All other Areas Subject to Protection within 100 feet of the edge of Activity shall be shown on the plans."  Regulations § 2.4(3).

6

Flags delineating the wetlands on the property were first planted by Acton Survey and Engineering in 2014.  In 2017, the commission sent a group of commissioners, including its conservation coordinator, on a site walk "to review existing conditions and proposed work."  The commission found no inaccuracies in the delineation of the wetlands.  "Most of the old wetland flags were still present and delineation appeared correct."  When asked by the commission whether she noticed any discrepancies in the delineation, the conservation coordinator, who is a wetlands specialist, responded, "No.  We walked that piece of the line . . . and it looked fine to me."  The commission reasonably accepted the existing delineation as confirmed by its wetlands specialist and thus rejected the plaintiffs' request for a third-party wetlands consultant.  See bylaws § 171-3(D); regulations § 2.4.

In 2018, during the plaintiffs' challenge before the State Department of Environmental Protection (DEP), Kazokas prepared an updated delineation, which was confirmed by the DEP.  Although these matters are important to the paired case reviewing the decision of the DEP, none of this information was before the commission when it issued the OOC and therefore these matters are not properly before us in reviewing the propriety of that decision.  See G. L. c. 30A, § 14 (5) (review by a court "shall be confined to the record"); RK&E Corp. v. Alcoholic

7

Beverage Control Comm'n, 97 Mass. App. Ct. 337, 340 (2020) ("Pursuant to G. L. c. 30A, § 14 [5], our review is confined to the administrative record. We do not substitute our judgment for that of the [agency]"); Secretary of Admin. & Fin. v. Commonwealth Employment Relations Bd., 74 Mass. App. Ct. 91, 95 (2009) ("Review pursuant to G. L. c. 30A is not the time to insert new issues into the case, especially those requiring statutory interpretation best left to the commission's expertise in the first instance").

4. Amendment to the OOC. Where, as here, the project changes after the issuance of an OOC, the commission may require the applicant to obtain a new OOC. In the alternative, the commission has the discretion to amend its original OOC where "the requested change . . . is of a relatively minor nature." Regulations § 3.3(2). In making this decision, the commission "will consider such factors as whether the purpose of the project has changed, whether the scope of the project has increased, whether the project meets relevant performance standards, and whether the potential for adverse impacts to the protected statutory interests will be increased." Regulations § 3.3(2). "Relatively minor changes which result in the same or decreased impact . . . are appropriate for amendments." Regulations § 3.3(2). Contrary to the plaintiff's contention, the regulations establish that, where the scope of the project

8

and any potential impacts on the wetlands have decreased, an amendment, rather than a new notice of intent, is appropriate.

In 2020, and following the DEP's decision, Kazokas returned to the commission with a modified plan for the cottage and the septic tank and pump chamber. The modification reduced the environmental impact by bringing the construction further from the wetlands. Even considering, as the plaintiff requests, the "project as a whole," the modification altered neither the purpose nor scope of Kazokas's project. The modification offered an overall less impactful plan than that approved in the original OOC. Accordingly, the commission properly amended the OOC.

<u>Judgment affirmed</u>.

By the Court (Neyman, Ditkoff & Englander, JJ.[5]),

*Paul Little*

Clerk

Entered: December 30, 2025.

---

[5] The panelists are listed in order of seniority.