TOWN OF BURLINGTON & others[1] vs. DISTRICT ATTORNEY
FOR THE NORTHERN DISTRICT.

Suffolk.  September 8, 1980. — October 31, 1980.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*District Attorney.  Municipal Corporations,* Town counsel, Police.

A decision by a district attorney to assign assistant district attorneys to
prosecute criminal cases in the Fourth District Court of Eastern Mid-
dlesex, the venue for offenses committed in the town of Burlington,
which was made only after the town's selectmen had decided to aban-
don the practice of using police prosecutors and to assign town counsel
to prosecute cases in that court, was an executive action not subject to
judicial review.  [718-723]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on July 11, 1979.

The case was heard by *Wilkins,* J.

*David Berman,* Town Counsel, for the plaintiffs.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the
defendant.

KAPLAN, J.  In this action commenced in the county court
by the town of Burlington and the town's selectmen, as
plaintiffs, against the district attorney for the Northern
district, as defendant,[2] the defendant answered the com-
plaint (as amended) with denials and affirmative defenses,
and then moved for judgment on the pleadings.  Mass. R.
Civ. P. 12 (c), 365 Mass. 754 (1974).  The effect of the mo-
tion was to challenge the legal sufficiency of the complaint.

---

[1] The town selectmen.

[2] An assistant clerk of the Fourth District Court of Eastern Middlesex
was originally joined as a defendant, but judgment was entered as to him
by the single justice, and he is not a party to the appeal.

See J.W. Smith & H.B. Zobel, Rules Practice § 12.16 (1974). A single justice of this court allowed the motion, with brief memorandum, and from the judgment dismissing the complaint this appeal was taken to the full bench.

The complaint pictured a situation as follows. Burlington police officers, without training as lawyers, had long acted as prosecutors of various criminal cases in the Fourth District Court of Eastern Middlesex, the venue for offenses committed in the town. On February 5, 1979, the presiding judge of that court, writing to the chief of the Burlington police department, noted an increase of criminal cases from Burlington and suggested that there was too much work to be handled by the one police prosecutor then assigned — resulting, he indicated, in an excessive number of dismissals of complaints. He recommended that two full-time police prosecutors be used, and also that the police department improve its preparation of the cases to be tried by the prosecutors.

In light of these criticisms, the plaintiff selectmen decided to abandon the practice of using police prosecutors, and asked town counsel to assume responsibility for these cases. Town counsel agreed, and a town meeting on June 6, 1979, voted to make an accommodating change of the town by-laws[3] and to appropriate a sum of money to compensate town counsel for the work. On July 9, 1979, the selectmen ordered the police to cease prosecuting cases in the District Court and to turn over pertinent files to the town counsel's designee. The transfer occurred on July 10.

On the same day the defendant district attorney made it known that he would "supersede" town counsel — which, in view of the termination of police prosecution, meant that he proposed to have one or more assistant district attorneys prosecute in District Court. The complaint charged that

---

[3] The by-law requiring that town counsel and each member of a firm delegated to advise the town should have five years' experience in practice, was amended to authorize the selectmen to allow representation by an attorney with less experience if he was directly supervised by town counsel who was fully qualified.

the defendant's action was illegal or arbitrary in certain respects to be mentioned. Wherefore final relief was sought in the form of an injunction[4] against the defendant's "interfering with the prosecution of criminal cases by counsel designated by Plaintiffs to prosecute criminal cases in the Fourth District Court of Eastern Middlesex except where for cause previously established said Defendant would normally prosecute a criminal case in said court."[5] The action was filed on July 11, 1979.

On even casual inspection, the general scheme of criminal prosecution which emerges in this Commonwealth from statute, decision, and common understanding is antithetical to the plaintiffs' case. District attorneys within their respective districts "shall appear for the commonwealth in the superior court[6] in all cases, criminal or civil, in which the commonwealth is a party or interested." G. L. c. 12, § 27 (set out in full in the margin).[7] There is a recent statute with a similar requirement for the appearance of district attorneys in jury-of-six cases in the District Courts. G. L. c. 218, § 27A (g). But it is also established that the district

---

[4] Jurisdiction was invoked under G. L. c. 231A, § 1 (declaratory actions), c. 249, §§ 4, 5 (actions in the nature of certiorari and mandamus), and c. 211, § 3 (superintendency power of Supreme Judicial Court). In view of the substantive outcome, we need not dwell on the "jurisdictional" basis of the action.

[5] No doubt the "except" clause was intended to reflect the fact that in the past the district attorney had chosen to prosecute some cases — probably the more serious ones — in lieu of the police prosecutor, but the precise meaning of "for cause previously established" is obscure.

[6] We do not pause to give the exact titles of the Superior and District Courts after the court "unification" of 1978.

[7] General Laws c. 12, § 27, reads: "District attorneys within their respective districts shall appear for the commonwealth in the superior court in all cases, criminal or civil, in which the commonwealth is a party or interested, and in the hearing, in the supreme judicial court, of all questions of law arising in the cases of which they respectively have charge, shall aid the attorney general in the duties required of him, and perform such of his duties as are not required of him personally; but the attorney general, when present, shall have the control of such cases. They may interchange official duties."

attorneys may at their choice appear on behalf of the Commonwealth in other criminal cases in the District Courts — such appearance is "discretionary." See *Commonwealth* v. *Buck*, 285 Mass. 41, 43 (1933). The Attorney General, however, as "chief law officer of the Commonwealth" (see *Commonwealth* v. *Kozlowsky*, 238 Mass. 379, 389 [1921]), having wide access to the courts in criminal matters, may supersede a district attorney as prosecutor, whether in the Superior Court or District Court. See *Commonwealth* v. *Kozlowsky*, *supra* at 387-388.[8] See also *Commonwealth* v. *Tuck*, 20 Pick. 356, 364 (1838); Richardson, The Office of the Attorney General: Continuity and Change, 53 Mass. L.Q. 5, 9-11 (1968).

Of course a district attorney may appear through an assistant district attorney under his direction, and the Attorney General through an assistant attorney general. And it has long been assumed, and reflected in actual practice, that a district attorney, to the extent that his appearance in criminal cases in District Court is discretionary with him, may elect to leave such prosecutions to local police officers designated by the particular police command of the municipality. See K.B. Smith, Criminal Practice and Procedure § 850 (1970).[9] Where that arrangement exists, the district attorney or an assistant nevertheless often steps in and handles the prosecution of the more serious crimes that may appear on the District Court calendar.

There is a suggestion in the complaint that, where the arrangement just described has existed over a long period of time, the district attorney is disabled from reclaiming that

---

[8] The comprehensive powers of the Attorney General are related in the *Kozlowsky* case to G. L. c. 12, § 27 (see note 7, *supra*), and c. 12, § 10 (dealing primarily with unlawful combinations), as well as to the common law; they are not constricted by G. L. c. 12, § 6 (advice to district attorneys, and so forth).

Some account of the history of the office of Attorney General appears in the *Kozlowsky* case and in *Secretary of Administration & Fin.* v. *Attorney Gen.*, 367 Mass. 154 (1975).

[9] There is no claim of a power in the district attorney to choose a police officer in a police department and designate him as police prosecutor.

body of prosecutions and undertaking to do the job himself or through his assistant. The claim, indeed, would have to go further and contend that the district attorney remains disabled even when the municipality means itself to change the arrangement by introducing town counsel in place of the police prosecutor. This contention of a kind of prescriptive right in the town is dressed up by a reference to the introductory provision of the Home Rule Amendment.[10] But in our view it is refuted by the clear traditional understanding about the district attorney's appearance at his option in District Court prosecutions.

So the plaintiffs are reduced to the argument that the defendant's action in the particular circumstances was arbitrary and therefore, according to the plaintiffs, to be undone by the court, with town counsel confirmed as prosecutor. What the argument leaves in the shade is that the district attorney, in deciding to act himself or by assistants as prosecutor, was taking executive action — action comparable to that in his choosing to nol-pros a criminal case.[11] The virtual exclusion of judicial intervention to check or correct the district attorney in the latter situation (see *Commonwealth* v. *Tuck,* 20 Pick. 356, 366 [1838] [nol-pros by Attorney General]; *Attorney Gen.* v. *Tufts,* 239 Mass. 458, 489, 538 [1921] [district attorney]), follows from Part I, art. 30, of the Massachusetts Constitution declaring a separation of powers. See *Ames* v. *Attorney Gen.,* 332 Mass. 246, 252-253 (1955). Examples of executive action similarly resistant to check by a court are the Attorney General's decisions whether to seek to enforce a charitable trust — the question agitated in the famous *Ames* case, *supra* — and

---

[10] Article 89 of the Amendments to the Constitution of the Commonwealth, § 1, declares: "It is the intention of this article to reaffirm the customary and traditional liberties of the people with respect to the conduct of their local government, and to grant and confirm to the people of every city and town the right of self-government in local matters . . . ."

[11] We put to one side here G. L. c. 278, § 15 — the special power of town counsel in District Court prosecutions under municipal by-laws to "enter a nolle prosequi or do anything relative to such prosecution which may be done by the district attorney."

whether to try title to public office by an action in the nature of quo warranto. See *Brierley* v. *Walsh*, 299 Mass. 292 (1938). See also *Manning* v. *Municipal Court of the Roxbury Dist.*, 372 Mass. 315 (1977).[12]

For purposes of the present case we need not say that the district attorney's choice would be impervious to attack under any and all imaginable conditions. We are clear, however, that it is so here, accepting the averments of the complaint free of their merely adjectival embellishments. It is alleged that the defendant was actuated by a mistaken understanding of certain propositions of law,[13] and it is suggested that he failed to give due weight to the implications of the cited provisions of the Home Rule Amendment (assuming here that that provision amounted to less than an entitlement by prescription). So also there is a charge that the defendant should have discussed his move with the selectmen instead of acting on ex parte communications, and that his true motive was to force the selectmen to revert to the system of police prosecution. There is a further obscure allegation regarding the defendant's failure to take account of the plaintiffs' concerns about the costs of court appearances by Burlington police officers, and finally — what may be the cri de coeur of the complaint — that the defendant had no basis for believing that town counsel would not prosecute adequately, and better than a police officer. Thus the plaintiffs attempt to "catechize" the defendant (see *Ames* v. *Attorney Gen.*, 332 Mass. 246, 252 [1955]); but there is no such assertion of serious impropriety or venality or scandal as might, conceivably, put a boundary to the executive immunity. Cf. *Attorney Gen.* v. *Tufts*, 239 Mass. 458, 538 (1921).[14]

---

[12] To be distinguished is judicial check on the Attorney General's disapproval of a municipal by-law to the extent that the statute was interpreted to provide for such oversight as in *Concord* v. *Attorney Gen.*, 336 Mass. 17 (1957), construing G. L. c. 40, § 32.

[13] Such as that Mass. R. Crim. P. 2 (b) (12) or (13), 378 Mass. 846 (effective July 1, 1979), outlaws use of town counsel as prosecutor.

[14] It may be observed here that the plaintiffs had the possible recourse of memorializing the Attorney General to supersede the defendant. Cf. also

In our view the complaint states no substantive case that should evoke a judicial response. The single justice recognized the executive nature of the defendant's action and the weakness of the factual challenge. Also, he denied that the plaintiffs had "standing" to raise the substantive question. Besides noting that the emptiness of the present attack on executive action leads naturally to doubts about the attackers' threshold standing to sue, we need not pursue the standing issue.

*Judgment affirmed.*

G. L. c. 12, § 26 (Supreme Judicial or Superior Court in absence of Attorney General or district attorney may "appoint some suitable person to perform their duties"). For the power of the Justices of the Supreme Judicial Court to remove a district attorney on charges, see G. L. c. 211, § 4, and *Attorney Gen.* v. *Tufts*, 239 Mass. 458 (1921); *Attorney Gen.* v. *Pelletier*, 240 Mass. 264 (1922). With regard to prosecuting officers' avoiding conflict of interest, see G. L. c. 12, § 30, and *Commonwealth* v. *Tabor*, 376 Mass. 811 (1978).