O’Neill, J.
Plaintiffs, junior high and high school students in the Falmouth School System and their *493 parents, brought this action against defendants, the Falmouth School Committee (FSC), in response to FSC’s implementation of a condom availability program in the schools. Plaintiffs’ amended complaint alleges that the condom distribution infringes on family privacy and free exercise rights in violation of the First and Fourteenth Amendments of the United States Constitutions, 42 U.S.C. §1983 and G.L.c. 12 §1II. Plaintiffs also seek declaratory judgments establishing that defendants’ conduct violated G.L.c. 274, §3 and G.L.c. 265, §23, by functioning as accomplices to statutory rape on or by the students, G.L.c. 119, §51 A, by failing to report sexual abuse of students reasonably expected to occur based on students’ use of condoms, and G.L.c. 71 §30, the moral education statute. Finally, plaintiffs also seek a preliminary injunction to prevent defendants from continuing to make condoms available to students.
This matter is now before the court on defendants’ motion for summary judgment. FSC argues that because the plaintiffs have failed to make a threshold showing of a constitutional violation, summary judgment should enter in their favor. Defendants further argue that plaintiffs have neither standing nor a cause of action for the declaratory relief sought, and that plaintiffs have not met their burden for injunctive relief. For the reasons stated below, defendants’ motion for summary judgement is allowed, and plaintiffs’ motion for preliminary injunction is denied.
BACKGROUND
The undisputed material facts are taken from the pleadings and affidavits submitted by the parties.
On January 2, 1992, following an authorizing vote of the FSC, the superintendent of schools issued a memorandum to the teaching staff of grades 7 through 12, detailing the condom availability program. At Lawrence Junior High School, students could request free condoms from the school nurse. Prior to receiving them, students would be counseled.[3] The nurse was also instructed to give students pamphlets on AIDS/HIV and other sexually transmitted diseases. At Falmouth High School, students could request free condoms from the school nurse, or students could purchase them for $0.75 from the condom vending machines located in the lower level boys’ and girls’ restrooms. Counseling by trained faculty members would be provided to students who requested it, and informational pamphlets were available in the nurse’s office. The superintendent’s memorandum instructed the staff to reserve their own opinions regarding condom availability in order to respect students’ privacy. The memorandum also indicates that the superintendent’s presentation of the condom availability to the student body would stress abstinence as the only certain method for avoiding sexually transmitted diseases. The condom availability program took effect on January 2, 1992.
The FSC condom program does not provide for an “opt out” for students’ parents whereby the parents have the option of excluding their student child from the availability of condoms. Nor is there a parental notification provision in the FSC program by which parents would be notified of their children’s requests for condoms.
Because no high school currently exists in the town of Mashpee, Mashpee residents attend Falmouth High School pursuant to a five-year contract between the Mashpee and Falmouth school committees. The contract does not provide for Mashpee residents to vote in the elections of FSC members. The contract does not prohibit the Mashpee School Committee (MSC) from entering into a similar contract with other neighboring schools or school committees. On September 20, 1992, the MSC voted 4-1 to object to the FSC condom availability program. Pursuant to the contract between the FSC and the MSC, this vote was not binding on the FSC.
DISCUSSION
I. Summary judgment and preliminary injunction
Because a request for injunctive relief requires an evaluation of the moving party’s likelihood of success on the merits as well as the nature of the injury claimed, Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980), the court will first consider the defendants’ motion for summary judgment on the merits.
Summary judgment shall be granted where there are no genuine issues as to any material fact in dispute and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further,] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 850, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The material facts in the present matter are undisputed.[4] Plaintiffs allege that the FSC program is unconstitutional. Their position is that the FSC condom distribution program conveys a message of encouragement to the students to engage in sexual promiscuity. *494 Specifically, plaintiffs argue that the program interferes with their constitutionally protected right to nurture arid direct the moral upbringing of their children. At the same time, plaintiffs argue that the FSC program violates their right to freely exercise their religion by instilling in their children sincerely held beliefs regarding chastity, morality and the sin of sex outside of marriage.[5] To be sure, plaintiffs share defendants’ concern over the spread of AIDS/HIV amongst the students. Nevertheless, plaintiffs’ position is that the state of Massachusetts, acting through the FSC, must not be allowed to invade the constitutionally protected privacy of the home, nor interfere with the constitutional guarantee of freedom of exercise.
Defendants deny that the FSC condom availability program invades these constitutionally protected areas. Moreover, defendants argue that because plaintiffs have not established that the FSC condom policy violates plaintiffs’ constitutional rights, that this case should be dismissed as a matter of law. Defendants ask the court to refrain from substituting its judgment for that of the FSC, whose condom policy was arrived at through proper political and legislative processes.[6]
A. Predicate finding of constitutional violation
This case involves the competing interests of parents and the state in the education and upbringing of children. The law is well settled that public education of children is committed to the control, management and discretion of state and local school committees. Prince v. Commonwealth of Massachusetts, 321 U.S. 158, 166-67, 64 S.Ct. 438, 442 (1944); Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270 (1968); Wulff v. Wakefield, 221 Mass. 427, 429 (1915). The law is also established that the constitution protects “zones of privacy,” Roe v. Wade, 410 U.S. 113, 152, 93 S.Ct. 705, 726 (1973), Carey v. Population Services International, 431 U.S. 594, 684, 97 S.Ct. 2010, 2016 (1977), including family relationships, Prince, 321 U.S. at 166, and child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 573 (1925); Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625 (1923).[7]
“A State’s interest in universal education, however highly we rank it, is not totally free from a balancing process when it impinges on fundamental rights and interests, such as those specifically protected by the Free Exercise Clause of the First Amendment, and the traditional interest of parents with respect to the religious upbringing of their children . . .” Wisconsin v. Yoder, 406 U.S. 212, 214, 92 S.Ct. 1526, 1532 (1972). However, judicial balancing of the state’s interests against the parents’ interests occurs only if a constitutional violation by the state has first been established. Hernandez v. Commissioner of Internal Revenue, 490 U.S. 680, 109 S.Ct. 2136, 2149 (1989) (free exercise inquiry asks first whether government has substantially burdened central religious belief, if so, whether compelling government interest justifies it); Lyng v. Northwest Indian Cemetery Protective Assoc., 485 U.S. 439, 447-52, 108 S.Ct. 1319, 1324-26 (1988) (road construction through Native American sacred grounds not violative of the First Amendment; balancing of burden on free exercise against state’s compelling interest predicated on finding of constitutional violation); Yoder, 406 U.S. at 214, 92 S.Ct. at 1532 (state compulsory school attendance law found to impinge on Amish free exercise); Doe v. Irwin, 615 F.2d 1162, 1169 (6th Cir. (1980) (where no unconstitutional interference with parents’ rights was found, there was no need to engage in balancing of state’s and parents’ interests). See also, Ware v. Valley Stream High School District, 550 N.E.2d 420, 426 (Ct.App.NY 1989) (free exercise inquiry follows two-step analysis). “Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values.” Epperson v. Arkansas, 393 U.S. 103, 104, 89 S.Ct. 266, 270 (1968). Thus, in order for plaintiffs in this matter to survive summary judgment, this court must find that the FSC condom policy rises to the level of a constitutional infringement.
B. Coercion required for constitutional violation
Because the issues of free exercise and privacy are so intertwined in this case, and because “the outer limits of this aspect of privacy have not been marked,” Carey, 431 U.S. at 684, 97 S.Ct. at 2016, the court will address both rights using the First Amendment free exercise inquiry.[8] See Grove v. Mead School, 753 F.2d 1528, 1531 (9th Cir.), cert. den., 474 U.S. 826, 106 S.Ct. 826 (1985) (one aspect of religious freedom of parents is the right to control the religious upbringing and training of their minor children).
The First Amendment provides that the government “shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . .’’ U.S. Const., amend. I. “The distinction between the two clauses is apparent — a violation of the Free Exercise Clause is predicated on coercion while the Establishment Clause need not be so attended.” School District of Abington v. Schemp, 374 U.S. 203, 223, 83 S.Ct. 1560, 1572 (1963) (emphasis added). ‘To establish a violation of that [free exercise] clause, a litigant must show that the challenged state action has a coercive effect that operates against the litigant’s practice ofhis or her religion.” Id., 374 U.S. at 222, 83 S.Ct. at 1572. The government can not prohibit the free exercise of religion, either directly or through indirect coercion or penalties on free exercise. Lyng, 485 U.S. at 449, 108 S.Ct. at 1326.
*495 “This does not and cannot imply that incidental effects of government programs, which may make it more difficult to practice but have no tendency to coerce individuals into acting contrary to their religious beliefs, require government to bring forward a compelling justification for its otherwise lawful actions.” Id. Mere exposure to ideas which contradict religious beliefs does not impermissibly burden the free exercise of religion; the First Amendment does not guarantee that a school curriculum will offend no religious beliefs. See Ware v. Valley Stream High School, 550 N.E.2d 420, 427 (Ct.App.NY 1989). See also Grove v. Mead School District, 753 F.2d 1528, 1543 (9th Cir.), cert. den., 474 U.S. 826 (1985) (mere offense at having textbook in school curriculum, where reading not compelled, did not violate First Amendment); Wilson v. Block, 708 F.2d 735, 741 (D.C. Cir. 1983) (government actions that merely offend or cast doubt on religious beliefs do not violate Free Exercise Clause). Moreover, “the First Amendment does not permit the State to require that teaching and learning must be tailored to the principles or prohibitions or any religious sect or dogma.” Epperson, 393 U.S. at 106, 89 S.Ct. at 271.
C. FSC program not coercive
Plaintiffs in the present matter argue that the FSC program is coercive in two ways.[9] On one hand, plaintiffs assert that the program is coercive because under the compulsory attendance law of Massachusetts, G.L.c. 76, §1, plaintiffs are required to send their children to school, thus the students’ acceptance of the FSC condom program is compelled, in contradiction of plaintiffs’ family values and religious beliefs. Plaintiffs rely heavily on Wisconsin v. Yoder, 406 U.S. 212, 92 S.Ct. 1526 (1972), in which the United States Supreme Court held that the compulsory education statute of that state violated the Amish plaintiffs’ rights under the Free Exercise Clause of the First Amendment.
The situation in the Yoder case is clearly distinguishable from the present matter. To begin with, the compulsory education statute of Wisconsin was truly coercive, in the sense that parents who failed to comply with it faced criminal charges and convictions. The Court, after making exhaustive findings regarding the religious beliefs and practices unique to the Amish community held that, “[t)he impact of the compulsory-attendance law on respondents’ practice of the Amish religion is not only severe, but inescapable, for the Wisconsin law affirmatively compels them, under threat of criminal sanction, to perform acts undeniably at odds with fundamental tenets of their religious beliefs.” Yoder, 406 U.S. at 218, 92 S.Ct. at 1534. The Yoder Court went on to limit the reach of its finding, stating that the factual record establishing the coercive effect of the Wisconsin statute on the Amish was “one that probably few other religious groups or sects could make . . .” Yoder, 406 U.S. at 235-36, 92 S.Ct. at 1543. See also Lyng, 485 U.S. at 457, 108 S.Ct. 1329; Doe, 615 F.2d at 1168 (both cases distinguishing Yoder based on the coercive nature of its compulsory education statute). Thus, reliance on the Yoder case is misplaced, because plaintiffs have not shown that the FSC condom policy inescapably compels them to perform acts undeniably at odds with their religious and moral beliefs.
Plaintiffs also contend that the FSC condom program is coercive or compulsory, because it fails to provide parents with an “opt out” mechanism allowing them to withhold their children’s participation in the program. The fact that there is no “opt out” provision, in and of itself, can not be said to give the FSC condom program a coercive character. If the FSC condom availability program is not coercive, there is no need for an “opt out” provision.
The FSC condom program is one of “condom availability” and not one of “condom distribution.” As described by the undisputed facts above, the FSC program is not coercive. FSC is not in any way forcing students to participate in the program, and neither students nor their parents are being penalized or sanctioned if they choose not to participate. See Alfonso v. Fernandez, 584 N.Y.S.2d 406, 410 (1992) (public high school’s condom availability program, which did not include an “opt out” provision for parents, held not violative of constitutional parental privacy or free exercise rights). “A State benefit is not being conditioned upon conduct prohibited by one’s faith, nor is a benefit denied due to conduct mandated by one’s faith.” Id. Simply put, the condoms are there for the asking.
Moreover, there is “no prohibition against plaintiffs’ participating in decisions of their minor children on issues of sexual activity and birth control. The plaintiffs remain free to exercise their traditional care, custody and control over their un-emancipated children.” Doe, 615 F.2d 1162, 1169 (6th Cir. 1980) (no deprivation of parental privacy right found where program making contraceptives available to minors did not provide for parental notification).[10] Competition for students’ attention and allegiance, incidental burdens on religious beliefs, and exposure to ideas inconsistent with personal and moral values do not per se rise to the level of constitutional infringements.
In conclusion, this court finds that the FSC condom availability program is not coercive of plaintiffs’ constitutionally protected rights of privacy and free exercise and, therefore, plaintiffs have failed to make a threshold showing of a constitutional violation of the First and Fourteenth Amendments. The same analysis disposes of the plaintiffs’ claim under 42 U.S.C. §1983 and G.L.c. 12, §111.
The court must therefore refrain from determining whether a compelling state interest outweighs *496 the parents’ constitutional interests. “The Constitution does not, and courts cannot, offer to reconcile the various competing demands on government, many of them rooted in sincere religious belief, that inevitably arise in so diverse a society as ours. That task, to the extent that it is feasible, is for the legislatures and otherinstitutions." Lyng, 485 U.S. at 453, 108 S.Ct. at 1327. As a matter of law, summary judgment must be granted. Furthermore, because plaintiffs have not demonstrated a likelihood of success on the merits, their request for a preliminary injunction is denied.
II. Declaratory relief under statutory claims.
A declaratory judgment under G.L.c. 231A requires an actual controversy which is specifically set forth in the pleadings. A court action cannot concern hypothetical controversies. The purpose of the “actual controversy” requirement is to ensure that litigants file complaints for declaratory judgment to obtain relief only from “uncertainty and insecurity with respect to rights, duties, status and other legal relations.” Mass. Assoc. of Ind. Agents and Brokers Inc. v. Comm’r. of Ins., 373 Mass. 290, 292 (1977). A real dispute is raised by a litigant with a definite interest, which unless addressed will almost immediately and inevitably lead to litigation. Bunker Hill Distributing, Inc. v. District Attorney for the Suffolk District, 376 Mass. 142, 144 (1978). Abstract assertions will not support a claim for declaratory judgment. Quincy City Hospital v. Rate Setting Commission, 406 Mass. 431, 439 (1990).
Plaintiffs have not demonstrated that an actual dispute exists under G.L.c. 274, §3 and M.G.L.c. 265, §23, accessory to statutory rape. More importantly, plaintiffs have no cause of action or standing to seek a declaration as to how the Commonwealth should proceed in enforcing the state’s criminal statutes. “[I]n American jurisprudence ... a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.” Whitley v. Commonwealth, 369 Mass. 961, 962 (1975) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). Nor may a court properly direct or compel the executive to prosecute a law, in light of the principle of separation of powers of Part I, Art. 30 of the Massachusetts Constitution. Burlington v. District Attorney for the Northern District, 381 Mass. 717, 721 (1980).
For virtually the same reasons, declaratory judgment is not proper under G.L.c. 119, §51A. Plaintiffs’ claim under this reporting statute is dependent on a declaration that the FSC was and continues to be an accessory to statutory rape. For the reasons stated above, plaintiffs have no standing for declaratory judgment. Moreover, a decree that defendants must report their own criminal activity against their own penal interest would seriously implicate defendants’ constitutional rights against self-incrimination.
Finally, plaintiffs also lack standing under the moral education statute, G.L.c. 71, §30, which vests a cause of action in employers of educators, allowing them to restrict certain communications while at work, communications otherwise protected by the free speech guarantee of the First Amendment. See Coyne v. City of Somerville, 770 F.Supp. 740, 751-53 (D.Mass. 1991).
ORDER
For the foregoing reasons it is hereby ORDERED that:
1) Defendants’ motion for summary judgment is ALLOWED:
2) Plaintiffs’ motion for preliminary injunction is DENIED; and
3) Plaintiffs’ claim for declaratory relief is DISMISSED.

 Plaintiffs’ complaint alleges that on one occasion, a Lawrence Junior High student requested a condom on a Friday afternoon and was supplied with one after being asked only, “do you know how to put one on?” and then told to return for counseling the following week.

 Plaintiffs have submitted numerous affidavits, articles and studies which dispute the effectiveness of latex condoms in prevention of the spread of AIDS/HIV. Whether such data is controverted or not, it is not material for the purpose of deciding summary judgment, nor germane to the constitutional issue presented. See Zorach v. Clausen, 343 U.S. 306, 310, 72 S.Ct. 679, 682 (1952).

 The sincerity of plaintiffs’ beliefs is not at issue.

 Plaintiffs have not attacked the legitimacy or adequacy of this political process.

 Among these privacy interests is a minor’s right to make decisions affecting procreation, including a right to access contraception. Carey v. Populations Services International, 431 U.S. 678, 693-94, 97 S.Ct. 2010, 2020-21 (1977).

 Alternatively, even if the free exercise and privacy inquiries were conducted separately, they would both focus on coercion as the test for a constitutional violation. See Doe v. Irwin, 615 F.2d 1162, 1167 (6th Cir. 1980) (noting that the leading U.S. Supreme Court cases analyzing violations of parents’ constitutional right to care and nurture their children focus on whether the state is either requiring or prohibiting some activity).

 Plaintiffs also argue that coercion is not necessary to a claim of a violation of free exercise or privacy.

 In fact, because minors have constitutional rights to access contraceptives, an “opt out” provision may itself be constitutionally problematic. See Carey, 431 U.S. at 692, 97 S.Ct. 2020 (“the State does not have the constitutional authority to give a third party an absolute and possibly arbitrary veto [citation omitted] which the state itself is absolutely and totally prohibited from exercising”).