Gershengorn, J.

INTRODUCTION

The plaintiff, Mary B. Ritchie (hereinafter “Plaintiff’), has brought the present action against the Massachusetts State Police (hereinafter “MSP”), Colonel John Difava (hereinafter “Difava”) in his official capacity, Detective Lieutenant Richard Lauria (hereinafter “Lauria”), and Joanne Nason (hereinafter “Nason”) pursuant to G.L.c. 151B, Sec. 4(16A), G.L.c. 12, Sections 11H and 1II (violations of civil and constitutional rights), as well as under the common law theories of intentional interference with an employment relationship, defamation, and intentional infliction of emotional distress. This matter is presently before the court on the MSP and Difava’s (collectively, “Defendants”) motion, pursuant to Mass.R.Civ.P. P. 12(c), for judgment on the pleadings on Count I of plaintiffs complaint. For the following reasons, defendants’ motion for judgment on the pleadings is ALLOWED.
FACTUAL BACKGROUND[1]
Plaintiff has been employed by the MSP since June 13, 1988. As of July 19, 1992, plaintiff has worked in the Sudbury Crime Scene Services Section of the Massachusetts State Police (hereinafter “CSSS”) under the supervision of Sergeant Deborah Rebeiro (hereinafter “Rebeiro”). At all time relevant to this matter Lauria was the superior officer at CSSS.
At some point during plaintiffs employment at CSSS, Lauria and Nason (at the time, an administrative assistant reporting directly to Lauria) commenced a personal relationship over the course of which Lauria often displayed preferential treatment towards Nason. In August of 1998, plaintiff was informed that Lauria wanted the troopers at CSSS to contribute a portion of their retroactive pay increase to provide a bonus for Nason and another civilian employee. Plaintiff, however, refused to make such a contribution. Some time thereafter, Lauria called plaintiff into his office at which time he interrogated plaintiff concerning what she had told other troopers about the proposed bonus, as well as made disparaging remarks about her.
Subsequently, in December of 1998, at which time the plaintiff was nine months pregnant, Lauria asked plaintiff to respond to a call after she had been removed from the call list for over two months. When plaintiff refused to respond to said call due to her medical condition, she was instructed by Rebeiro to apologize to Lauria.
In July of 1999, plaintiff informed Rebeiro that, after learning that Nason informed another trooper that she believed plaintiff did not like her, she feared being retaliated against. Then on July 12, 1999, Lauria issued a “To/From” and “Observation Report” (hereinafter “Observation Report”) to plaintiff for disobeying an order. The “Observation Report” was issued as a result of the plaintiffs going home sick on July 9, 1999 when the Crime Scene Services Homicide Liaison was seeking assistance in investigating a homicide. Laurie became involved in this matter after being informed by Nason that plaintiff was unsuccessful in locating a trooper to provide the necessary assistance prior to going home. After being reprimanded by Lauria, plaintiff was informed that Nason would intercede on her behalf if she spoke with her about the “Observation Report.” Plaintiff did not speak to Nason about the matter.
Subsequently, in July of 1999, plaintiff spoke with a union representative about her belief that she was being subjected to a hostile work environment. As a result, on July 27, 1999, plaintiff filed a sexual harassment complaint against Lauria and Nason with *562 the Sexual Harassment Unit of the MSP. Soon thereafter, plaintiff received the results of her most recent employee evaluation report.[2] While plaintiff did not score negatively in any of the categories, she was given scores in several areas which were lower than she had received on past employee evaluations. Plaintiff subsequently appealed her adverse scores. Said appeal, however, was denied sometime thereafter.
On or about November 1, 1999, Lauria and Nason were transferred from CSSS. Soon thereafter, on December 6, 1999, the Sexual Harassment Unit of the MSP found that the relationship between Lauria and Nason had, in fact, created a hostile working environment that constituted harassment. Finally, plaintiff filed a complaint with the MCAD on January 3, 2000.

DISCUSSION

“The effect of a motion for judgment on the pleadings is to ‘challenge the legal sufficiency of the complaint.’ ” Minaya v. Massachusetts Credit Union Share Insurance Corporation, 392 Mass. 904, 905 (1984), quoting Burlington v. District Attorney for the N. Dist., 381 Mass. 717, 717-18 (1980). “For purposes of the court’s consideration of the [rule 12(c)] motion, all of the well pleaded factual allegations in the adversary’s pleadings are assumed to be true and all contravening assertions in the movant’s pleadings are taken to be false.” Id., quoting 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure Sec. 1368, at 691 (1969).
A motion to dismiss should only be granted if “it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.” General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 413 Mass. 583, 584 (1992); see also Nader v. Citron, 372 Mass. 96, 98 (1977). A “complaint is not subject to dismissal if it would support relief on any theoiy of law.” Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979). A complaint should not be dismissed merely because it alleges a novel theory of liability or unconvincing facts. See Bell v. Mazza, 394 Mass. 176, 183 (1985).

A. Plaintiff fails to allege sufficient facts to establish a sexual harassment claim.

“It shall be an unlawful practice: . . . [flor an employer, personally or through its agents to sexually harass any employee.” G.L.c. 151B, Sec. 4(16)(A). Sexual harassment, as alleged by plaintiff in this case, “includes ‘sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature’ which has ‘the purpose or effect of unreasonably interfering with an individual’s work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment.’ ” Melnychenko v. 84 Lumber Company, 424 Mass. 285, 287 (1997), quoting G.L.c. 151B, Sec. 1(18)(b).[3]
In order to make out a case for hostile work environment sexual harassment, a plaintiff must be able to demonstrate that “(i) she was subjected to unwelcome, unwanted harassment (which is either sexual in nature, or based upon her sex), and that (ii) the harassment was severe and pervasive enough to create an abusive environment (iii) about which her employer knew or should have know.” Rose v. Baystate Medical Center, Inc., 985 F.Sup. 211, 217 (1997), citing Mentor Sav. Bank v. Vinson, 477 U.S. 577, 70-72 (1986); see Morrison v. Carleton Woolen Mills, 108 F.3d 429, 436-37 (1st Cir. 1997). “To constitute actionable harassment, the claimed conduct must be both objectively and subjectively offensive.” Messina v. Araserve, Inc., 906 F.Sup. 34, 36 (1995), citing Ramsdell v. Western Mass. Bus. Lines, Inc., 415 Mass. 673, 678 (1993). “That is, the court must consider whether, in the totality of the circumstances, the alleged conduct is sufficiently severe and pervasive to ‘interfere with a hypothetical reasonable person’s work performance.’ ” Id., quoting Lewis v. Gillette, 1993 WL 291771 (D.Mass.), affirmed by Lewis v. Gillette, 22 F.3d 22 (1993).
A prerequisite to filing suit under G.L.c. 151B, Sec. 4 is to file a timely charge of discrimination with the Massachusetts Commission Against Discrimination (hereinafter “MCAD”). See Charland v. Muzi Motors, Inc., 417 Mass. 580, 583-84 (1994). Such MCAD charge must be filed within six months of the instance of discrimination. G.L.c. 151B, §5. This six-month filing rule acts as a statute of limitations for discrimination claims. See Christo v. Edward G. Boyle Ins. Agency, 402 Mass. 815, 817 (1988). The limitation, however, “will not apply when ‘the unlawful conduct complained of is of a continuing nature.’ ” Cuddyer v. The Stop and Shop Supermarket Company, 2001 WL 776482 *5 (Mass), citing 804 Code Mass. Regs. Sec. 1.03(2) (1993). “This exception recognizes that some claims of discrimination involve a series of related events that have to be viewed in their totality in order to assess adequately their discriminatory nature and impact.” Id.
Prior to addressing the substantive issues asserted by the parties in the instant case, this court notes that the Defendants do not raise the statute of limitations issue. Nevertheless, this court notes that plaintiff filed her MCAD complaint on January 3, 2000.[4] Therefore, plaintiff must allege an instance of sexual harassment on July 3, 1999 or later.[5] In this case, plaintiff has specifically cited in her complaint two alleged incidents of sexual harassment occurring within the six-month limit, the July 12, 1999 “Observation Report” and the August 1999 Employee Evaluation Report. This court then may only consider those earlier incidents alleged by the plaintiff if the continuing violation doctrine applies in this case.
In order for a plaintiff to establish a timely hostile work environment claim for sex discrimination under G.L.c. 15 IB, she must “establish that she . . . was compelled to work in an [environment permeated by abuse] during her employment.” Id. at 6. “Further, she *563 must show, within the six-month limitation period, the existence of at least one incident of sexual conduct which, standing alone might not necessarily support her claim, but which substantially relates to earlier incidents of abuse, and substantially contributes to the continuation of a hostile work environment, such that the incident anchors all related incidents, thereby making the entirety of the claim for discriminatory conduct timely.” Id. In this case, both the July 12, 1999 “Observation Report” and the August 1999 Employee Evaluation Report were the result of earlier incidents of alleged sexual harassment such that they serve to anchor those earlier incidents to them. Thus, plaintiffs entire claim for sexual harassment was timely filed per the requirements of G.L.c. 15 IB.
Plaintiff has not alleged any conduct which would constitute “sexual advances” or “requests for sexual favors” as proscribed under G.L.c. 15 IB, Sec. l{18)(b). Therefore, plaintiff must allege conduct which rises to the level of “other verbal or physical conduct of a sexual nature [that] have the purpose or effect of unreasonably interfering with [her] work performance by creating an intimidating, hostile humiliating or sexually offensive work environment” in order to meet the statutory requirements of G.L.c. 151B, Sec. 1(18)03).
Plaintiffs claim of hostile work environment based on sexual harassment is not based on conduct directed at her, but rather the office atmosphere or work environment which was caused by a personal relationship between Lauria and Nason. However, “[a] sexual relationship between a supervisor and a co-employee could adversely affect the workplace without creating a hostile sexual environment. A supervisor could show favoritism that', although unfair and unprofessional, would not necessarily instill the workplace with oppressive sexual accentuation.” Drinkwater v. Union Carbide Corp., 904 F.2d 853, 862 (3rd Cir. 1990).
Plaintiff does not allege that the relationship between Lauria and Nason was particularly or overtly sexual in nature. Plaintiff does, however, allege[6] that Lauria and Nason: 1) were often in the office kitchen together; 2) played “footsie” with one another, held hands, and gave one another shoulder massages; 3) played romantic music in their shared office; 4) departed from the office together during the day. While the above allegations may lead a reasonable observer to the conclusion that Lauria and Nason’s relationship was unprofessional or inappropriate, said assertions, even if true, do not evidence an environment so sexually charged that it would have interfered with plaintiffs “work performance by creating an intimidating, hostile, humiliating or sexually offensive” work place. G.L.c. 15 IB, Sec. 1 (18Kb). All of the other conduct alleged by plaintiff in support of her claim amounts to either isolated instances of favoritism (e.g., request that the troopers contribute to a fund which would provide a bonus for Nason) or normal office protocol (Lauria issuing the “Observation Report” and plaintiff receiving slightly lower scores on her recent employee evaluation.). Therefore, plaintiff “has not put forth sufficient evidence [or allegations] to show that the environment . . . caused her to suffer because of her sex.” Id. at 863.

B. Plaintifffails to allege sufficient facts to establish a retaliation claim.

M.G.L.c. 15 IB, Sec. 4(4) states that it is a violation of said chapter for:
Any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint testified or assisted in any proceeding under Section five.
To establish a prima facie case of retaliation, plaintiff must show that: “[s]he engaged in conduct protected by [either federal or Massachusetts law]; [s]he was subjected to an adverse employment action at the time or after the protected conduct occurred; and there was a casual link between the protected conduct and the adverse employment action.” Connell v. Bank of Boston, 924 F.2d 1169, 1179 (1st Cir. 1991). At a minimum, plaintiff must be able to present competent evidence that defendants knew of her protected activity and that a retaliatory motive played a part in the alleged adverse employment action. See Lewis v. Gillette Co., 22 F.3d 22, 24 (1st Cir. 1994).
In this case, plaintiff informed Rebeiro in July 1999 that she was concerned about being retaliated against after learning that Nason informed another trooper that she believed plaintiff did not like her. Subsequently, on July 27, 1999, plaintiff filed a sexual harassment complaint against Lauria with the Sexual Harassment Unit of the MSP alleging a hostile work environment created by the relationship between Lauria and Nason. This action by plaintiff is protected, thus this court must evaluate any responsive conduct by defendants subsequent to July 27, 1999.
The second element of retaliation, adverse employment action, requires that the employer must “(1) take something of consequence from the employee, say, by discharging or demoting her, reducing her salary, or divesting her of significant responsibilities (citations omitted), or (2) withhold from the employee an accouterment of the employment relationship, say, by failing to follow a customary practice of considering her for promotion after a particular period of service" (citations omitted). Blackie v. Maine, 75 F.3d 716, 725 (1st Cir. 1996). In this case, the only retaliatory conduct specifically alleged to have occurred subsequent to plaintiff filing her complaint with the Sexual Harassment Unit of MSP was the issuance of an employee evaluation report in which plaintiff scores were lower, but not negative, than those received previously by her.[7] Therefore, plaintiff has not alleged sufficient *564 facts to support a claim of retaliation under G.L.c. 15 IB. Sec. 4(4).

ORDER

For the foregoing reasons, it is hereby ORDERED that Defendant’s, Massachusetts State Police and Colonel John Difava, Motion for Judgment on the Pleadings is ALLOWED.

 The following facts are taken from the plaintiffs brief and conceded by defendants for purposes of this motion only, in accordance with the standard for a motion for judgment on the pleadings. See Minaya v. Massachusetts Credit Union Share Ins. Corn., 392 Mass. 904 (1984).

 While plaintiff states in her Opposition to Defendant’s Motion for Judgment on the Pleadings that the Employee Evaluation Report was issued in August, she gives no such date in her Complaint. For the purposes of this motion, however, this court will assume that the report was issued after plaintiffs formal complaint was filed.

 There are in fact two types of sexual harassment: (1) quid pro quo-, and (2) hostile work environment. Quid pro quo sexual harassment occurs when an employee’s “submission to or rejection of [sexual advances], request or conduct is made ... a term or condition of employment or ... a basis for employment.” G.L.c. 151B, Sec. 1(18)(a). Plaintiff concedes that there is no evidence that quid pro quo sexual harassment occurred in this case.

 See Complaint at p. 1.

 Even if the discrimination is alleged to have been a “continuing violation” (i.e., an ongoing course of discrimination), plaintiff must have evidence of at least one instance of unlawful conduct within the six months prior to the filing of the MCAD complaint. See Lynn Teachers Union v. MCAD, 406 Mass. 515, 520-21 (1990).

 At this time the court notes that none of the plaintiffs allegations related to the sexual overtones of the relationship between Lauria and Nason are specifically cited in plaintiffs complaint but, rather are alluded to in plaintiffs Opposition to Defendants Motion for Judgment on the Pleadings under the subsection entitled “Facts Plaintiff Expects to Establish During Discovery.” The court will, however, in fairness to the plaintiff consider these allegations in its discussion.

 Again, it is unclear from the record whether the employee evaluation report was actually issued before or after plaintiffs formal complaint was filed with the Sexual Harassment Unit. For the purposes of discussion, this will assume that the report was issued after the complaint to that Unit.