Wilson, Paul D., J.
Plaintiff Malden Police Patrolmen’s Association, the union representing patrolmen in the Malden Police Department (the “Union”), filed this lawsuit in response to an announcement by the Chief of Police of the Defendant Cfiy of Malden that the Police Department intends to implement a test program concerning the use of GPS tracking devices and video cameras in police cars. The Union takes a position that these contemplated actions constitute a change in working conditions and trigger an impact bargaining requirement under the collective bargaining agreement between the Union and the City.
The Union seeks a preliminary injunction against the City’s installation or use of the GPS devices and cameras until the use of these devices has been the subject of impact bargaining. After a hearing, I will deny that injunction request, for the reasons set forth below.
Background
I take the following facts from the Union’s Verified Complaint and the documents the Union has attached to that Verified Complaint (and, in one case, the collective bargaining agreement presented at oral argument by the City).
Since April 2013, the Police Department has been talking with Motorola about running a 90-day trial of the use of a Motorola GPS tracking device/video camera system in Malden police patrol cars. The Police Chief has been providing information about this contemplated system to all members of the Police Department at roll calls since April 2013, and Motorola made two presentations at the Department on May 1, 2013 explaining the contemplated system. After these presentations, a member of the Union’s executive board asked the Police Chief for contact information for the Motorola representative so that the Union could get answers to follow-up questions, and the Chief provided that contact information.
On September 24, 2013, the Police Department issued a memo to all Malden police personnel announcing that a 90-day trial of the Motorola GPS and video equipment was scheduled to start on September 30, 2013. During the trial, five cruisers would be outfitted with GPS systems, and two of those cruisers would also receive video cameras. At the preliminary injunction hearing on October 17, 2013, a representative of the Police Department stated, in response to my question, that the devices have been installed, but have not yet been activated because of problems with how the equipment interacts with radio communications, among other things.
The Department’s September 24 memo sparked correspondence between the Union (and another union representing superior officers) on the one hand, and the Police Chief and the Mayor on the other hand, about the need to engage in impact bargaining before the GPS devices and cameras could be used. In a letter dated September 30, 2013, the Police Chief said to counsel for the Union, “(S]hould the union want to bargain about this matter on an impact bargaining basis, please do not hesitate to document any concerns or proposals that may be involved, and, if a meeting is needed in order to address same we can certainly arrange for same.” Exhibit D to Verified Complaint.
Analysis
“A party seeking a preliminaiy injunction must show that (1) success is likely on the merits; (2) irreparable harm will result from denial of the injunction; and (3) the risk of irreparable harm to the moving party outweighs any similar risk of harm to the opposing party.” Cote-Whitacre v. Dept, of Public Health, 446 Mass. 350, 357 (2006) (Spina, J., concurring), citing Packaging Industries Group v. Cheney, 380 Mass. 609, 616-17 (1980). Because this case concerns the operations of the Malden Police Department, a public body performing an undeniably important public function, there is a substantial public interest that also must be considered. Commonwealth v. Mass. CRINC, 392 Mass. 78, 89 (1984).
1. Likelihood of Success on the Merits
The Union makes a one-line argument about why it is likely to succeed on the merits: “the collective bargaining agreement in effect between the parties clearly prohibits any change in working conditions without an agreement, and controlling statutes obligate the Defendant to bargain in good faith regarding same.” Plaintiffs’ Motion for Preliminaiy Injunction at 1.
*486 A.The Collective Bargaining Agreement
The three provisions of the collective bargaining agreement attached to the Verified Complaint as Exhibit A and highlighted by the Union nowhere prohibit “any change in working conditions without an agreement.” The first provision merely establishes that the agreement was in effect through June 30, 2013 (and the parties agreed at oral argument that it has since been extended and is still in effect). Article 2, Section 3 contains the City’s agreement that it shall not “violate any right of employees, or of the [Union] as provided by law by Malden,” while also recognizing that the City has expressly reserved certain management prerogatives. The Union also cites article 4, section 1, which is a standard integration clause requiring that alterations of the collective bargaining agreement shall be “mutually agreed upon by the parties and set down in writing and signed.” These provisions, taken separately or together, do not establish that the Union is likely to succeed on the merits of its claim that the City cannot install GPS devices and video cameras without bargaining with the Union, at least to the extent that the Union bases its claim on the collective bargaining agreement.
B.Chapter 150E
The Union does not identify in its motion for an injunction the “controlling statutes” that it believes obligate the Cify to bargain in good faith before installing GPS devices or video cameras in patrol cars. In its Verified Complaint, however, the Union includes a count for violation of M.G.L.c. 150E, §§6 and 10(a)(5). Section 6 requires the City to “negotiate in good faith with respect to wages, hours, standards or productivity and performance, and any other terms and conditions of employment.” Section 10(a)(5) makes it a prohibited practice for the City to “[r]efuse to bargain collectively in good faith with the [Union] as required in section six.” I will assume, therefore, that the Union’s position is that the installation of GPS devices in five patrol cars, and video cameras in two of those cars, falls within the category of “any other terms and conditions of employment” within the meaning of section 6, and therefore must be the subject of impact bargaining under section 10(a)(5).
Not every decision by a public employer that has some effect on public employees will fall into this category. Indeed, in its oft-cited decision in City of Lynn v. Labor Relations Commission, 43 Mass.App.Ct. 172 (1997), the Appeals Court noted that “[a]ny attempts to define with precision and certainty the subjects about which bargaining is mandated by [c.] 150E is doomed to failure.” Id. at 177, quoting Greenbaum, The Scope of Mandatory Bargaining under Massachusetts Public Sector Labor Relations Law, 72 Mass.L.Rev. 102 (1987). The City of Lynn court then spent five pages discussing how the Massachusetts appellate courts have dealt with that question over the years. The decisions in the many cases on the subject of mandatory bargaining are broad-ranging, the court concluded, and “not always easy to reconcile.” City of Lynn, 43 Mass.App.Ct. at 177.
The appellate courts have provided some guidance at the extremes of the continuum of possible mandatory bargaining issues. For example, a municipality is required to bargain about how layoffs will be implemented , because “termination of employment by layoff . . . involves the very essence of the relationship, the employment itself, not a peripheral matter.” School Committee of Newton v. Labor Relations Commission, 388 Mass. 557, 563 (1983). On the other hand, a police chief is free to eliminate unscheduled, nonmandatory overtime of police officers for budgetary reasons, without bargaining about the elimination, as such overtime is “a peripheral matter.” West Bridgewater Police Ass’n v. Labor Relations Commission, 18 Mass.App.Ct. 550, 554 (1984).
The Union now raises the issue of where the trial use of GPS devices and video cameras falls on the spectrum laid out injudicial precedent in this complex area. At oral argument, the Union could point no case in which a court has considered whether the permanent or temporary installation of GPS devices and video cameras in patrol cars—a practice already accomplished in many other municipalities across the Commonwealth and the country, the Union concedes—requires prior impact bargaining. In its motion for an injunction, the Union cites no judicial decisions requiring bargaining over any other analogous police department or municipal actions—in fact, the Union cites no case law whatsoever on this or any topic.
Certainly the installation of GPS devices and video cameras does not “involve! ] the very essence of the relationship, the employment itself,” in the words of the Supreme Judicial Court in School Committee of Newton, 388 Mass, at 563. In its Verified Complaint, its motion for an injunction, and its correspondence with Police Chief over the implementation of the trial program, the Union is silent about why it believes the GPS devices and video cameras are central enough to the “essence” of the employment relationship that they should be the subject of mandatory bargaining. At oral argument, the Union suggested that police officers feared that if they were videotaped by these (outward-facing) video cameras doing something improper while making an arrest, or if the GPS device revealed that the patrol car was outside of Malden or was stopped for five extra minutes at lunch time, disciplinary action might result. If that is the concern, then Union interest is “peripheral” to the employment relationship, as in West Bridgewater Police Ass’n, rather than at its “very essence,” as in City of Lynn.
C.Potential Jurisdictional Issues
Furthermore, it is not entirely clear that this Court has subject matter jurisdiction over this case. Both the collective bargaining agreement and Chapter 150E suggest that the Union should first exhaust its reme *487 dies in other forums before it can come to this court. At this early stage in this lawsuit, I need not (and do not) decide the jurisdictional question. However, the existence of a dispute on this point must be counted against the Union in the calculus of likelihood of success on the merits.
Count I of the Union’s two-count Verified Complaint is for breach of a contract, the collective bargaining agreement. But that agreement, presented to me at oral argument by the City, requires the Union to follow a grievance and arbitration procedure with regard to “any decision, or order of either the Mayor [or] . . . the Chief of Police ... as any such decision may affect police personnel or conditions of work and employment,” including “matters involving questions whether the Ciiy is complying with its obligations under this Agreement, including the meaning, application or interpretation of the Agreement.” Collective Bargaining Agreement, Art. 9, §1.
Count II, the only other claim, asserts that the City is violating M.G.L.c. 150E, §§6 and 10(a)(5), quoted above. But if the City is committing a “prohibited practice” within the meaning of section 10(a)(5), as this Count alleges, Chapter 150E provides that the Union may file a charge at the Division of Labor Relations, which shall make the decision in the first instance about whether there is merit to the Union’s position. M.G.L.c. 150E, §11; see, e.g., City of Lynn, 43 Mass.App.Ct. at 175.
For these reasons, I find that the Union has not established a likelihood of success on the merits of its claim that the City must engage in impact bargaining before beginning its trial of the use of GPS devices and video cameras in patrol cars.
2. Other Packaging Industries Factors
Having found that the Union has failed to establish a likelihood of success on the merits, I need go no further. However, for purposes of any appeal, I will briefly analyze the remaining requirements for an injunction under Packaging Industries Group v. Cheney, 380 Mass. 609, 616-17 (1980).
In both its Verified Complaint and its motion for an injunction, the Union has not pointed to any particular harm, much less irreparable harm, that it or its members will suffer if the GPS tracking devices and video cameras were to be turned on. I find that the harm claimed by the Union at oral argument—that disciplinary actions might result if police officers are recorded doing something arguably improper on the video cameras, or if the GPS devices show that they are not where they should be while they are supposed to be working—does not constitute irreparable harm. The possibility of disciplinary action against a police officer does not flow directly from the use of the GPS devices or video cameras, but rather from hypothetical actions taken by individual officers in the future, followed by equally hypothetical decisions of the Department to discipline the officers as a result, and thus the connection is too attenuated. More fundamentally, I believe that improper actions by Malden police officers will be rare indeed, and equally rare will be the occasions on which the Police Department imposes discipline for an action not deserving of discipline. Thus the ultimate “harm” apparently feared by the Union, unjustified disciplinary action, is too unlikely to amount to irreparable harm.
The next step in the injunction analysis is to balance the irreparable harm to be suffered by Plaintiff in the absence of an injunction against the irreparable harm to be suffered by Defendant if the injunction were to issue. Because the Union has not pointed to any irreparable harm that it or its members would suffer from the issuance of an injunction, I need not engage in the Packaging Industries balancing of harms.
Finally, I find that the public interest weighs against issuance of an injunction. The City argues with some justification that the GPS devices will protect the safety of police officers themselves, by allowing police dispatchers to arrange for quicker response by back-up units, and the safety of the citizens of Malden as well, by making it easier for the Department to ensure that all parts of the City have appropriate police coverage at any given moment. The availability of videotapes of arrests is likely to aid in the prosecution of criminal defendants, for example by permitting a judge or jury to observe how a driver arrested for operating under the influence performed on field sobriety tests. In addition, if, on presumably rare occasions, the videotape might document a police officer’s violation of a defendant’s constitutional rights, exposing such violations is in the public interest.
Conclusion
The Police Department GPS/video camera initiative has been in the works since April, as the Union is well aware. In response to the Union’s late-September complaints, the City has offered to engage in impact bargaining. Furthermore, the Police Department currently plans only a 90-day trial of GPS units in five patrol cars, two of which will also be equipped with video cameras. Thus, there has been time, and there continues to be time, for the Union to accept the Cily’s invitation to bargain, or to exercise its rights under the collective bargaining agreement or under Chapter 150E, before the City decides whether to so equip all patrol cars.
For the foregoing reasons, Plaintiffs Motion for Preliminary Injunction is DENIED.